FRANKLIN NATIONAL BANK, Appellant, v S. MERRILL SKEIST, Defendant and Third-Party Plaintiff-Respondent. ROBERT G. HUNDLEY et al., Third-Party Defendants-Respondents.

First Department, October 23, 1975

*Joseph H. Levie* of counsel *(Harold M. Hoffman* and *Richard Jankell* with him on the brief; *Rathheim, Hoffman, Kassel & Silverman,* attorneys), for appellant.

*Martin W. Felcher* of counsel *(Harvey M. Goldstein* with him on the brief; *Freedman, Lilienthal & Felcher,* attorneys), for defendant and third-party plaintiff and respondent

*Marvin Usdin* for third-party defendants-respondents.

MURPHY, J. The principal issue presented on this appeal is whether Special Term erred in holding that the guarantee executed by defendant Skeist in favor of plaintiff, particularly certain words of limitation typed thereon, is so ambiguous as to preclude the granting of summary judgment. Subsidiary issues raised hereon relate to certain unfulfilled promises allegedly made by plaintiff bank.

At the request of the president of a company called Epsilon Sigma Pi, Inc. ("Epsilon"), Skeist introduced plaintiff to said officer and plaintiff agreed to open a $30,000 line of credit in favor of Epsilon on condition that it receive guarantees from

certain individuals (the third-party defendants herein) and Skeist.

The guarantee, which Skeist admits executing and delivering to plaintiff, is in printed form and provides, *inter alia:*

"1. In consideration of advances, loans, extension of credit, renewals, acquisition of notes and other instruments for payment of money * * * due or to become due, heretofore made * * * and * * * now or hereafter to be made * * * to or for the account of [Borrower] by [Bank] * * * as Bank may deem advisable, the undersigned [Skeist] absolutely and unconditionally guarantees to Bank the prompt payment of claims of every nature and description of Bank against Borrower * * * and any and every obligation and liability of Borrower to Bank * * * whether now existing or hereafter incurred * * * and now or hereafter owing to or acquired * * * by Bank."

"4. Guarantor consents that Obligations or the liability of the Borrower or any other guarantor * * * may, from time to time in whole or in part, be * * * modified * * * compromised, settled or released by Bank * * * and that Bank may refuse payment, in whole or in part, from any party to Obligations, all without any notice to, or further assent by, or any reservation of rights against, Guarantor and without in any way affecting or releasing the liability of Guarantor hereunder".

"9. Guarantor waives any and all notice of * * * the creation or accrual of any of said Obligations, or of any renewals or extensions thereof from time to time * * *. This guarantee shall be a continuing, absolute and unconditional guarantee of payment * * *. This guarantee shall continue in full force and effect notwithstanding the termination or revocation of any other guarantee of Obligations by any other co-guarantor thereof with respect to his liability as guarantor".

On the face of the guarantee, typed directly above the phrase "Guarantee of all liability" are the words "Limited to thirty thousand dollars". Skeist. argues that the words of limitation disclose the maximum amount plaintiff might loan to Epsilon without discharging him; and complies with the oral assurance he received that the line of credit would not exceed $30,000. Plaintiff denies making any such representation; and contends that the words of limitation merely denote Skeist's maximum personal liability.

Plaintiff ultimately loaned Epsilon a total sum of $68,000. After Epsilon made an assignment for the benefit of creditors,

plaintiff declared the loan in default; and received $38,000 from the other guarantors who were thereupon released from further liability. The instant action was then commenced against Skeist for the unpaid remaining balance of the indebtedness due plaintiff. Skeist impleaded the other individual guarantors.

In addition to the defenses predicated on Skeist's interpretation of the scope of the guarantee, he (and the third-party defendants-respondents) also plead a breach by plaintiff of an asserted oral promise to sponsor Epsilon for a small business association ("SBA") loan.

The threshold question is whether the words "Limited to thirty thousand dollars" typed on an otherwise seemingly standard "continuing, absolute and unconditional guarantee of payment" are susceptible of differing construction or whether the phrase is, as a matter of law, unambiguous. If the latter, evidence of the circumstances surrounding its execution is inadmissible and the instrument must be accorded its legal intendment.

That the guarantee in issue is a continuing one is manifest from the language used therein. Paragraph 9 expressly states that it is. And, pursuant to paragraph 1 thereof, Skeist guarantees the prompt payment of "any and every obligation of [Epsilon] to [plaintiff] whether now existing or hereafter incurred * * * and now or hereafter owing to or acquired * * * by * * * [plaintiff]."

The typed words of limitation do not change the obvious intent of the instrument. Said language "clearly qualifies the responsibility of [Skeist] and not the amount of [Epsilon's] future transaction with the plaintiff." *(Gates v McKee,* 13 NY 232, 234.)

In *McShane Co. v Padian* (142 NY 207, 209), the guarantee of payment was "for any and all materials which they may deliver * * * I will not be liable for any balance exceeding five hundred dollars which may become due." The Court of Appeals there wrote (p 210): "We regard [such] language as clear, presenting no ambiguity, and as creating a continuing guaranty which, by its terms, limits defendant's liability to any balance, not exceeding five hundred dollars, which may become due, but does not undertake to regulate the amount of [the principal obligor's] future transactions with the plaintiff." And further (p 211): "The natural and ordinary import of [the guarantee's] language discloses an intent on the part of de-

fendant to guarantee the purchases of [the debtor] from plaintiff of any and all materials provided his liability was not to exceed five hundred dollars, on any balance which may become due. * * * [and] We hold * * * that parol evidence [is] inadmissible as to surrounding circumstances to aid in construing this guaranty, and rest our decision upon the language of the instrument solely."

In view of the long-settled meaning imparted to the language used herein, no ambiguity exists and, accordingly, evidence of the circumstances surrounding the execution and delivery of the guarantee may not be received.

The only remaining serious issues requiring comment concern allegations of fraud in the inducement. Skeist claims he executed the guarantee in reliance on the truth of a statement attributable to plaintiff that the maximum aggregate amount of the loans to Epsilon would not exceed $30,000. He also alleges (as do defendants-respondents) that plaintiff improperly withdrew its sponsorship of an SBA loan after Epsilon borrowed additional funds in reliance thereon.

Aside from the insufficiency of the papers submitted below to show the capability of establishing such defense, the instant case (unlike *Millerton Agway Coop. v Briarcliff Farms,* 17 NY2d 57, relied on by respondents, but which is also distinguishable on its facts) involves public policy affecting obligations due a bank.

Briefly stated, such policy precludes a party from asserting that an asset of a bank is something less than it appears on its face to be. *(Rothschild v Manufacturers Trust Co.,* 279 NY 355; *Mount Vernon Trust Co. v Bergoff,* 272 NY 192; *Bay Parkway Nat. Bank v Shalom,* 270 NY 172.)

The rationale for such rule was ably articulated in *Mount Vernon Trust Co. v Bergoff (supra,* p 196) wherein the court stated:

"A fictitious note delivered to a bank, intended to become part of its apparent assets, though not intended to be enforceable, is in itself a continuing falsehood calculated to deceive the public and any person delivering such a note becomes a party to the falsehood.

"In such case it is immateral whether the note was based on good consideration or not. The stability of banks is a matter of such public concern that the State or Federal government regulates the affairs of each bank and periodically examines

its apparent condition. The State cannot sanction any device intended to give a false appearance to a transaction or increase the apparent stability of a bank. * * * Public policy requires ·that a person who, for the accommodation of the bank executes an instrument which is in form a binding obligation, should be estopped from thereafter asserting that simultaneously the parties agreed that the instrument should not be enforced."

Lastly, Skeist's partial defense that his right of contribution was impaired by plaintiff's release of the other obligors, lacks merit since paragraph 4 of the guarantee explicitly gave plaintiff such right "without in any way affecting or releasing the liability of [Skeist] hereunder." (Cf. *Indianapolis Morris Plan Corp. v Karlen,* 28 NY2d 30; *National Bank of North Amer. v Sobel,* 31 AD2d 750.)

In light of the foregoing, the order of Supreme Court, New York County (S. ROSENBERG, J.), entered September 6, 1974, insofar as it denied plaintiff's motion for summary judgment, should be reversed, on the law, and said motion granted, with costs.

Settle order.

STEVENS, P. J., MARKEWICH, LUPIANO and LANE, JJ., concur.

Order, Supreme Court, New York County, entered on September 6, 1974, insofar as it denied plaintiff's motion for summary judgment, unanimously reversed, on the law, and said motion granted. Appellant shall recover of defendant, third-party plaintiff-respondent $60 costs and disbursements of this appeal.

Settle order on notice.