**LONG ISLAND TRUST COMPANY,**
**Plaintiff-Appellant,**

v.

**Edward T. DICKER, (Nanette S. Dicker, as executrix of the estate of Edward T. Dicker, substituted in place and stead of Edward T. Dicker, deceased), Defendant-Appellee.**

**No. 80–1711.**

United States Court of Appeals,
Fifth Circuit.*
Unit A

Oct. 19, 1981.

Rehearing and Rehearing En Banc
Denied Nov. 16, 1981.

Coke & Coke, Lawrence L. Beason, Werner Powers, Dallas, Tex., for plaintiff-appellant.

Day & Elliott, Richard Elliott, Dallas, Tex., for defendant-appellee.

Before CHARLES CLARK and RANDALL, Circuit Judges, and SHARP **, District Judge.

RANDALL, Circuit Judge:

Plaintiff-Appellant Long Island Trust Company ("Long Island") brings this appeal from an adverse judgment in the court below in its suit against Defendant-Appellee Edward T. Dicker.[1] Long Island seeks to enforce Dicker's obligations under the terms of a guaranty agreement (the "Guaranty") dated September 10, 1971, in which Dicker guaranteed all liabilities owed to Long Island by Gemstone Miners, Ltd. ("Gemstone"). Long Island's claim[2] is

---

* Former Fifth Circuit case, Section 9(1) of Public Law 96–452—October 14, 1980.

** District Judge of the Northern District of Indiana, sitting by designation.

1. Dicker died testate on February 15, 1981, while this appeal was pending. By unpublished order dated March 19, 1981, this court granted the motion of Nanette S. Dicker—Dicker's widow, personal representative, and executrix—for substitution of parties pursuant to Fed.R.App.P. 43(a).

2. Long Island is a New York banking corporation with its principal place of business in New

premised in part upon Gemstone's default on one promissory note in the amount of $114,000, due May 14, 1973, and another promissory note in the amount of $10,000, due July 30, 1973. Long Island obtained judgment against Gemstone in the amount of $157,000 in a New York state court on June 29, 1976, but that judgment has never been satisfied; Long Island's claim against Dicker is also predicated in part upon this judgment. Dicker was named as a defendant in the New York litigation, but was dismissed for want of personal jurisdiction.

Dicker defended on grounds that the Guaranty was obtained through fraud, and that the statute of limitations had run. The court below submitted the fraud issue to the jury, but the jury was unable to reach a verdict and was dismissed. The court then denied Long Island's motion for a directed verdict, but granted Long Island's motion for a new trial with respect to Dicker's liability on the $10,000 note. However, the court further held that the four-year statute of limitations contained in Tex. Rev.Civ.Stat.Ann. art. 5527 (Vernon 1958) barred Long Island's claim with respect to the $114,000 note; in so doing, the court specifically refused to apply the Texas saving statute, Tex.Rev.Civ.Stat.Ann. art. 5539a (Vernon 1958). The court entered final judgment pursuant to Fed.R.Civ.P. 54(b) on that portion of Long Island's suit which was premised on the $114,000 note, and Long Island appeals.

Finding that the district court, 480 F.Supp. 656, erred in its interpretation of the Texas saving statute, and that the court erred in denying Long Island's motion for a directed verdict, we reverse and remand with instructions to enter judgment in favor of Long Island.

## I. FACTUAL BACKGROUND TO THIS APPEAL

Gemstone, a New York corporation, was in the business of mining for precious gems in Africa. In need of additional capital, Gemstone planned in 1971 to conduct a public offering of its common stock in March 1972. To facilitate interim financing from Long Island, Gemstone sought Dicker as an outside guarantor. Dicker, a Texas investor, was a close friend of Gemstone's president, Aaron Knopf. In return for Dicker's signature on the continuous, unlimited Guaranty, Gemstone permitted Dicker to purchase 30,000 shares of its common stock at one cent per share; the anticipated price of the stock in the planned public offering was $3 per share.

In reliance on the Guaranty, Long Island made substantial loans to Gemstone. But because the Securities and Exchange Commission refused to permit Gemstone's registration statement to become effective, the proposed public offering fell through. By August of 1973, Gemstone had defaulted on its obligations to Long Island under the two notes totalling $124,000.

Long Island sued both Gemstone and Dicker in New York State court, and obtained judgment against Gemstone in the amount of $157,000. Dicker, however, was dismissed from the suit for want of personal jurisdiction. Long Island appealed, but the dismissal of Dicker was affirmed on May 16, 1977. *Long Island Trust Co. v. Gemstone Miners, Ltd.*, 57 A.D.2d 889, 394 N.Y.S.2d 407 (2d Dep't 1977). The judgment against Gemstone was never satisfied.

Accordingly, Long Island filed this suit against Dicker in the court below on June 23, 1977—well within sixty days after the dismissal of Dicker from the New York suit became final. Long Island purported to base its claim against Dicker upon Gemstone's liability under the 1976 New York judgment, rather than upon Gemstone's liability under the underlying notes themselves.[3]

York. Dicker was a Texas resident. Subject-matter jurisdiction is predicated on diversity of citizenship, 28 U.S.C. § 1332(a), (c) (1976).

**3.** Dicker later asserted three noncompulsory counterclaims against Long Island. The district court summarily disposed of two of these claims, and granted a separate trial with respect to the remaining claim.

Testimony at trial principally concerned Dicker's claim that his signature on the Guaranty was fraudulently induced by representations allegedly made by John Demato, a loan officer for Long Island. According to Dicker's testimony, Demato told him that the Guaranty, which was continuous and unlimited on its face, was in fact limited to $100,000 and for a period of 180 days. Dicker also testified that Demato represented to him that Long Island would fill in certain blanks in the Guaranty limiting it to $100,000 and 180 days, and that he only signed the Guaranty in reliance on these representations. It is undisputed that Dicker was a sophisticated businessman who had had extensive dealings with lending institutions prior to signing the Guaranty, and that he read and understood the Guaranty—including the provisions therein making it continuous and unlimited—prior to sign-

ing it. Demato denied having made any false statements to Dicker.

After several days of deliberation, the jury was unable to reach a verdict.[4] The court discharged the jury and requested renewed motions for a directed verdict pursuant to Fed.R.Civ.P. 50(b).[5] After both parties had done so, the court entered an interlocutory order on November 9, 1979, in which it concluded that Long Island's claim based on the 1976 New York judgment was, in fact, two claims—one for each of the two notes upon which Gemstone had defaulted. The court determined that Dicker's liability under the Guaranty accrued with respect to the $100,000 note on May 14, 1973, when the $100,000 note came due, and that Dicker's claim under that note was barred by the four-year statute of limitations contained in Tex.Rev.Civ.Stat.Ann. art. 5527 (Vernon 1958).[6] The court granted a new trial with

---

4. By special interrogatory, the jury was asked to decide (1) whether before Dicker signed the Guaranty, Demato promised Dicker that Dicker's liability thereunder would be limited to $100,000 and to a period not to exceed 180 days; (2) whether Demato made such promise for the purpose of inducing Dicker to sign the Guaranty; (3) whether Demato's promise was false; (4) whether the promise was a material inducement to Dicker's signing the Guaranty; and (5) whether Dicker justifiably relied on the promise in signing the Guaranty. The last four issues were conditioned on an affirmative response to the first.

5. In pertinent part, Rule 50(b) provides as follows:

Not later than 10 days after entry of judgment, a party who has moved for a directed verdict may move to have the verdict and any judgment entered thereon set aside and to have judgment entered in accordance with his motion for a directed verdict; *or if a verdict was not returned such party, within 10 days after the jury has been discharged, may move for judgment in accordance with his motion for a directed verdict.* . . . If no verdict was returned the court may direct the entry of judgment as if the requested verdict had been directed or may order a new trial. Fed.R.Civ.P. 50(b) (emphasis added).

6. At the time Dicker filed this suit, article 5527 provided in pertinent part as follows:

There shall be commenced and prosecuted within *four years* after the cause of action shall have accrued, and not afterward, all actions or suits of the following description:

1. Actions for debt where the indebtedness is evidenced by or founded upon any contract in writing.
. . . .
Tex.Rev.Civ.Stat.Ann. art. 5527 (Vernon 1958). Effective as of August 27, 1979, article 5527 was amended to read in pertinent part as follows:

There shall be commenced and prosecuted within *four years* after the cause of action shall have accrued, and not thereafter, all actions or suits in court of the following description:

1. Actions for debt.
. . . .
Tex.Rev.Civ.Stat.Ann. art. 5527 (Vernon Supp. 1981). The change in the statute is obviously immaterial to any issue in this lawsuit.

There is no question but that article 5527 is the applicable statute of limitations:

In *Guaranty Trust Co. v. York*, 326 U.S. 99, 65 S.Ct. 1464, 89 L.Ed. 2079 (1979), the [Supreme] Court confirmed that the *Erie* doctrine extends to state statutes of limitations. And in *Klaxon Co. v. Stentor Electric Manufacturing Co.*, 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941), the Court confirmed that the *Erie* doctrine means also that as a general matter, a federal court is bound to apply the choice of law rules of the state in which it sits in determining whether that state's or some different state's substantive law should govern.

Together, these two cases mean that in diversity lawsuits, a federal court is ordinarily bound to look to the choice of law rules of the state in which it sits to determine whether the state courts of that state would apply

respect to the $10,000 note, since four years had not passed between the date it came due (July 30, 1973) and the date Long Island filed this action (June 23, 1977). In response to the parties' joint motion, the court entered final judgment on the November 9 order pursuant to Fed.R.Civ.P. 54(b).[7]

## II. THE PROPER OPERATION OF THE TEXAS SAVING STATUTE

In the court below and on appeal, Long Island has advanced a number of alternative arguments as to why its suit is not barred in whole or in part by the four-year statute of limitations contained in article 5527. Its chief argument has been that since Dicker agreed in the Guaranty to pay "all liabilities" of Gemstone, it could properly base its claim on the New York judgment rather than the underlying notes—in which case its cause of action would have accrued in 1976 rather than when the notes came due in 1973. Long Island has also argued that the statute of limitations was tolled by the operation of Tex.Rev.Civ.Stat.Ann. art. 5537 (Vernon 1958), which tolls the running of the statute for periods during which Texas residents are absent from the state; Long Island contends that it must be granted a new trial because the court below impermissibly limited its ability to prove that Dicker was indeed absent from the state.

We reach neither of these arguments, however, for we hold that the court below erred in its conclusion that the Texas saving statute, article 5539a, did not toll the operation of article 5527's limitations period. Accordingly, we accept for purposes of this appeal the district court's characterization of Long Island's suit as stating multiple, independent claims.

The Texas saving statute reads in full as follows:

> When an action shall be *dismissed in any way*, or a judgment therein shall be set aside or annulled in a direct proceeding, *because of a want of jurisdiction of the Trial Court in which such action shall have been filed*, and within sixty (60) days after such dismissal or other disposition becomes final, such action shall be commenced in a Court of Proper Jurisdiction, the period between the date of the first filing and that of commencement in the second Court shall not be counted as part of the period of limitation unless the opposite party shall in abatement show the first filing to have been in intentional disregard of jurisdiction.

Tex.Rev.Civ.Stat.Ann. art. 5539a (Vernon 1958). Dicker contends, in essence, that the proper operation of this statute is limited to cases that have been dismissed from either another Texas state court or a federal dis-

---

their own state's statute of limitations or the statute of limitations of some other state. *Baron Tube Co. v. Transport Insurance Co.*, 365 F.2d 858, 860 (5th Cir. 1966) (en banc). *Ellis v. Great Southwestern Corp.*, 646 F.2d 1099, 1103 (5th Cir. 1981).

The Guaranty by its terms expressly provides that it shall be governed by New York law, and there is no question but that New York bears a reasonable relationship to the contract since both Long Island and Gemstone are incorporated and based in New York. The Texas courts, whose choice of law rules we are bound to apply, would honor this manifestation of the parties' intent. *Austin Building Co. v. National Union Fire Ins. Co.*, 432 S.W.2d 697, 701 (Tex. 1968).

But the Texas courts would apply their own state's statutes of limitations:

> When confronted with a lawsuit in which the substantive law of another jurisdiction is to be applied, Texas courts will most often apply their own state's statute of limitations;

this general principle is based on the theory that the foreign jurisdiction's statute of limitations is most often part of its procedural, rather than substantive, law.

*Ellis*, 646 F.2d at 1111. The only exception to this principle, *see id.*, is clearly inapplicable here.

7. Rule 54(b) is inapplicable when only one claim is asserted against a single defendant, *see, e. g., Carter v. Croswell*, 323 F.2d 696 (5th Cir. 1963), and Long Island's complaint purported to assert a single, indivisible claim against Dicker based on its 1976 New York judgment against Gemstone. The district court, however, recharacterized the suit as containing multiple claims—a characterization that we accept for purposes of this appeal, *see* part II of this opinion, *infra*. Hence, we have appellate jurisdiction under 28 U.S.C. § 1291 (1976).

trict court sitting in Texas. The parties concede that this is a question of first impression, in that it has never been addressed by either the Texas courts or the federal courts interpreting Texas law.[8] We believe, however, that the Texas courts would not agree with Dicker's argument.

First, and most important, the statute is not so limited by its terms. The statute does not refer to dismissal from "a Trial Court of this jurisdiction"; it simply says "Trial Court." The term "Trial Court" is nowhere defined by the Texas statutes;[9] accordingly, given its ordinary and most natural meaning, it must be taken to refer to *any* trial court.[10]

Second, we note that while no Texas appellate court has ever been called upon to answer the question of whether article 5539a applies when the court from which the action has been dismissed is one of a sister state, the Texas courts have repeatedly applied article 5539a to toll the statute of limitations in cases that have been dismissed from the federal courts. *E. g., Burford v. Sun Oil Co.*, 186 S.W.2d 306 (Tex. Civ.App.—Austin 1944, writ ref'd).[11] The federal courts are just as certainly courts of a jurisdiction other than Texas as are the courts of New York.

Third, we note that the Texas courts have consistently indicated that article 5539a should be given a liberal interpretation. In discussing the statute's legislative history, the *Burford* court made these remarks:

> It is manifest that the Act is remedial in every essence. It should therefore be given a liberal construction with a view of effectuating its manifest objective— relief from a penalty of limitation bar to one who has mistakenly brought his action "in the wrong court." ... So construed it is clear that the Act was intended to cover every case where the effect of the final judgment or order of the first court was tantamount to a dismissal because the action was mistakenly but in good faith brought in the wrong court. In other words, the effect of the court judgment or order and not its form or the name by which it is called is the controlling factor.

*Id.* at 310. This language clearly cuts against Dicker's suggestion that the Texas courts would take a restrictive view toward the meaning of the phrase "Trial Court."

Fourth, we note that courts from other jurisdictions are split in their interpretations of analogous statutes.[12] Thus, given

---

8. Unlike the law of every other state encompassed by the Fifth Circuit, Texas law does not permit us to certify this question to the state supreme court.

9. Compare Tex.R.Civ. 352 ("The term 'court below' means the court from which the appeal or writ of error is taken.").

10. This argument is inferentially supported by language that appears later in the statute. The statute does not refer to refiling in a *"Texas Court of Proper Jurisdiction,"* but merely to "a Court of Proper Jurisdiction." In our view, the careful and repeated use of such generic terms as "the Trial Court" and "a Court of Proper Jurisdiction" clearly indicates the Texas Legislature's recognition that in some instances, the courts of a foreign jurisdiction will be called upon by their choice of law rules to apply Texas' statutes of limitations as well its substantive laws.

It is not inconceivable, for example, that a plaintiff might file suit in Ohio, find his suit dismissed for lack of jurisdiction, and then refile in Michigan; if jurisdiction was proper in the Michigan court, and if Michigan's choice of

law rules dictated that it apply Texas' statute of limitations, the Michigan court would then be the "Court of Proper Jurisdiction" that would be called upon to apply article 5539a.

11. We note that by refusing to review the court of civil appeals' decision in *Burford* with the designation "writ refused," the Texas Supreme Court determined that the judgment of the court of civil appeals was correct *and* the principles of law declared in the opinion were correctly determined. *See State ex rel. McWilliams v. Town of Oak Point*, 579 S.W.2d 460, 462–63 (Tex.1979); Simpson, *Notations on Applications for Writs of Error*, 12 Tex. Bar J. 547, 574–75 (1949); Texas Law Review, Texas Rules of Form, 8–9 (4th ed. 1977)). This is not necessarily true of other writ designations, however. *See id.*

12. In considering the savings statutes of other states, the circuit courts have split on the question whether such statutes apply to suits originally filed in sister states. *See Stare v. Pearcy*, 617 F.2d 43 (4th Cir. 1980) (West Virginia Savings Statute held applicable to actions filed in sister state). *But see, Graham v. Ferguson*, 593

that article 5539a is to be interpreted broadly and remedially, we presume that the Texas courts would be disinclined to follow another jurisdiction's restrictive view and would instead favor the more liberal interpretations that many other jurisdictions have accorded analogous statutes.

Finally, we note that Dicker's suggested rule would not further the policies that ordinarily provide justification for the results otherwise created by statutes of limitations:

> Statutes of limitations are primarily designed to assure fairness to defendants. Such statutes "promote justice by preventing surprises through the revival of claims that have been allowed to slumber until evidence has been lost, memories have faded, and witnesses have disappeared. The theory is that even if one has a just claim it is unjust not to put the adversary on notice to defend within the period of limitations and that the right to be free of stale claims in time comes to prevail over the right to prosecute them."

*Burnett v. New York Central Railroad Co.,* 380 U.S. 424, 428, 85 S.Ct. 1050, 1054, 13 L.Ed.2d 931 (1965). It will virtually always be the case, as here, that a defendant who seeks a dismissal based on want of jurisdiction will have actual notice that the plaintiff intends to pursue a claim against him; given the extremely high probability that the plaintiff will refile in a proper court if the defendant is successful in obtaining the dismissal in the forum of the plaintiff's choice, the defendant has no one but himself to blame if evidence is lost, memories fade, and witnesses disappear.

For these reasons, we believe that the Texas courts would apply article 5539a to a suit which, as here, was dismissed for want of jurisdiction in the court of a sister state and has been refiled within sixty days thereafter in a court of proper jurisdiction.

Dicker suggests that the phrase "want of jurisdiction" should be limited to subject-matter jurisdiction. This claim, however, is rebutted by both the language and the facts of *Burford*, in which the "dismissal" from federal court was not for lack of subject-matter jurisdiction, but on abstention grounds. Again, we see no reason to read into the statute limitations that are not contained in the words therein. We believe that the Texas courts would extend article 5539a to cases involving dismissals for want of personal jurisdiction.

As counsel for Dicker conceded at oral argument, Dicker has never contended that Long Island's suit against him in the New York court was filed "in intentional disregard of jurisdiction," as that term is used in the final phrase of the statute. Neither has he contended that Long Island's resistance to his jurisdictional challenge in the New York courts was in anything other than complete good faith. *See Ellis v. Great Southwestern Corp.,* 646 F.2d 1099, 1115 n.18 (5th Cir. 1981). Further, this contention would have had to have been raised affirmatively by Dicker in his pleadings in the district court, since the statute requires that it be raised through a plea in abatement. *See Morgan Guaranty Trust Co. v. Blum,* 649 F.2d 342, 344–45 (5th Cir. 1981).

Accordingly, we hold that the district court erred in concluding that that portion of Long Island's claim that is premised on the $114,000 note was barred by the four-year statute of limitations contained in article 5527; that statute was tolled by the operation of the Texas saving statute, article 5539a.[13]

---

F.2d 764 (6th Cir. 1979) (holding Tennessee Savings Statute inapplicable to an action originally filed in Texas).

So too have state courts split on the question. *See Leavy v. Saunders,* 319 A.2d 44 (Del.1977) (holding Delaware's saving statute applicable to an action filed in sister state). *But see, Howard v. Allen,* 30 Ohio St.2d 130, 283 N.E.2d 167, appeal dismissed, 409 U.S. 908, 93 S.Ct. 251, 34 L.Ed.2d 169 (1972) (holding Ohio's sav-

ings statute inapplicable to an action filed in sister state).

**13.** Dicker's reliance on *Scurlock Oil Co. v. Three States Contracting Co.,* 272 F.2d 169 (5th Cir. 1959), and *Rigo Manufacturing Co. v. Thomas,* 458 S.W.2d 180 (Tex.1970), as authority for the proposition that the Texas savings statute is inapplicable to this action originally filed in New York is misplaced. In *Scurlock,* the first action, filed in Louisiana, was dis-

## III. THE MOTION FOR A DIRECTED VERDICT

Subsequent to the failure of the jury to return a verdict in the court below, Long Island moved for, and the court denied, a directed verdict on the question of Dicker's liability on the Guaranty. Long Island argues that the denial of the directed verdict was erroneous in that the only defense to liability (other than the statute of limitations)—fraudulent inducement of Dicker's signature—was improperly submitted to the jury. The trial court allowed Dicker to testify as to alleged oral misrepresentations made by John Demato, an officer of Long Island Trust, to Dicker, that the guarantee was limited to $100,000 for a period of 180 days, at the time Dicker signed the guarantee. Long Island maintains that Dicker should have been estopped from asserting this defense, i. e., that testimony of the oral representations should not have been admitted, and that, without any testimony relative to fraud, Dicker had no defense to the liability claim, and a directed verdict would have been proper.

According to the well established principle governing the granting or denial of a directed verdict, our review is limited to whether there was substantial evidence upon which reasonable men might reach different conclusions as to Dicker's liability on the Guaranty to warrant submission of the case to the jury. *Boeing Co. v. Shipman*, 411 F.2d 365 (5th Cir. 1969). If the defense of fraud was improperly submitted to the jury, no substantial evidence would

have existed and a directed verdict in favor of Long Island would have been proper. The only question necessary to determine whether Dicker's liability should have even gone to the jury is whether the defense of fraud was available to him.

■ To determine if this defense of fraud by oral misrepresentations was available we must make a preliminary finding of which state's law governs as to the availability of the defense of fraud. In this diversity case, it is incumbent upon this court to apply the law of the jurisdiction in which we sit, including that state's conflict of laws principles. *New York Life Insurance Co. v. Baum*, 617 F.2d 1201 (5th Cir. 1980). We thus look to the conflict of laws principles of Texas to determine whose law will govern this question whether Dicker could assert a defense of fraud to this guarantee.

■ Here Dicker and Long Island agreed in the Guaranty that New York law would govern. Texas law provides that the contracting parties' choice of law will be honored unless there is no reasonable relationship to the state of choice. *Austin Building Co. v. National Union Fire Ins. Co.*, 432 S.W.2d 697, 701 (Tex.1968). Here, the choice by Dicker and Long Island, having a reasonable relationship to the contract, would be honored by a Texas court and will be by this court. New York law governs the question whether fraud is a defense to this guaranty.[14]

■ Generally, New York allows an allegation of fraud to be asserted and shown by

missed because it was barred by the Louisiana Statute of Limitations—not because there was want of jurisdiction, as required by the language of the Texas Savings Statutes. The plaintiff refiled in Texas and attempted to claim the protection of the Texas savings statute. Since the original action was not dismissed for lack of jurisdiction, this Court held that the Texas savings statute did not apply. *Scurlock* is a far cry from that presented here where the original New York action was dismissed for lack of jurisdiction.

Likewise, *Rigo* is not on point. In *Rigo*, the original action was filed in federal court, dismissed for lack of jurisdiction, and then refiled in state court within 60 days. However, the plaintiff did not exercise due diligence in effecting service of process once the action was refiled in state court. For this reason it was

not "commenced" within the sixty day period, as required by the statute, though it had originally been filed and dismissed for want of jurisdiction in another court. Here, after the action in New York was filed, dismissed and refiled in Texas, Dicker was promptly served with process. "Commencement," i. e., service of process, within the sixty day period after the original dismissal, the issue in *Rigo*, is simply not an issue in this case.

14. The controlling cases are not completely clear as to whether an individual may not assert a defense of fraud where he has signed a guaranty or whether such a defense may be asserted but parol evidence may not be admitted to show such fraud. It is not necessary for us to address this question as, under either theory, Dicker's testimony of oral representa-

parol evidence, even in the face of a written agreement. *Centronics Financial Corp. v. El Conquistador*, 573 F.2d 779 (2d Cir. 1978). However, New York seems to have abrogated this general rule when the claims of oral misrepresentations are made as a defense to a guaranty given to a bank. In such cases, even a claim of fraud in the inducement based on oral misrepresentations may not be asserted as a defense. *Franklin National Bank v. Skeist*, 49 A.D.2d 215, 373 N.Y. S.2d 869 (App.Div.1975). In *Skeist*, remarkably similar to the case here, the defendant claimed that a bank official orally promised that the maximum loan would not exceed a specified amount—similar to Dicker's claim that his liability was limited to $100,000. The court in *Skeist*, in holding that the defendant could not assert this claim of fraud, stated:

> [T]he instant case involves public policy affecting obligations due a bank.
>
> Briefly stated, such policy precludes a party from asserting that an asset of a bank is something less than it appears on its face to be.

*Id.* 373 N.Y.S.2d at 873 (citations omitted).

*Skeist* governs here, whether New York law is framed in terms of fraud being unavailable as a defense or in terms of the inadmissibility of parol evidence of fraud where a guaranty to a bank is involved. The trial court erred in allowing this defense of fraud to be presented to the jury.[15] Because Dicker had no other viable defense to liability on the Guaranty, there was not sufficient evidence to submit the question of liability to the jury. The directed verdict should have been granted.

REVERSED and REMANDED with instructions to enter judgment in favor of Long Island.

---

tions should not have been allowed. Even if the question before us is framed as whether the judge erroneously allowed evidence of oral representations in violation of the parol evidence rule against oral statements which vary or contradict the terms of a written agreement, instead of whether fraud is available as a defense, New York law governs. The application of the parol evidence rule is a matter of substantive rather than procedural law in Texas. *Brannon v. Gulf States Energy Corp.*, 562 S.W.2d 219 (Tex.1977). Thus, the law governing the substance of the contract, rather than the law governing the procedure of the litigation, is applicable. Because the parties have effectively chosen New York, its law governs any question of admissibility of evidence to show fraud.

**15.** Dicker's reliance upon *Centronics Financial Corp. v. El Conquistador*, 573 F.2d 779 (2nd Cir. 1978), and *Long Island Trust Company v. International Institute for Packaging Education, Ltd.*, 38 N.Y.2d 493, 381 N.Y.S.2d 445, 344 N.E.2d 377 (N.Y.1976), is misplaced. In *Centronics*, while the general statement was made that parol evidence of fraud is admissible, the facts are distinguishable in that *Centronics* did not deal with a bank guaranty. Where a guaranty to a bank is involved, the general rule that fraud may be shown by parol evidence has been abrogated in favor of a public policy which disallows fraud as a defense.

So too, *Long Island Trust Company v. International Institute for Packaging Education* is materially different from this case. There, the claim by the defendant endorsers of a note was not one of fraud, but that the note which they had endorsed was conditioned upon the bank obtaining other endorsers. While the court stated that public policy would not, in that case, prevent the introduction of parol evidence of the condition, it did not, within its holding or in dicta, discuss whether fraud may be asserted as a defense, or the admissibility of parol evidence where fraud is alleged in a bank loan guaranty. Additionally, the court stated that parol evidence was allowed because the note was not unconditional. *Id.* 381 N.Y.S.2d at 449, 344 N.E.2d 377. In the case before us, the guaranty is expressly on its face unconditional. This case is no authority for the question before us.