Michael P. LEWIS, Plaintiff,

v.

Eric D. ROSENFELD, Robert Bernstein, Robert B. Tannenhauser, and Rosenfeld, Bernstein & Tannenhauser, L.L.P., Defendants.

Eric D. Rosenfeld, Robert Bernstein, Robert B. Tannenhauser, and Rosenfeld, Bernstein & Tannenhauser, L.L.P., Third–Party Plaintiffs,

v.

Auerbach, Pollack & Richardson, Inc., James P. Sinclair and Conrad Huss, Third–Party Defendants.

No. 00 Civ. 5368(SAS).

United States District Court, S.D. New York.

May 22, 2001.

---

Michael Schneider, New York City, Robert K. Whitt, Midland, TX, for Plaintiff.

Leonard Benowich, Roosevelt, Arfa & Benowich, LLP, White Plains, NY, for Defendants.

## OPINION AND ORDER

SCHEINDLIN, District Judge.

On July 20, 2000, Michael Lewis filed an action against Eric Rosenfeld, Robert Bernstein, Robert Tannenhauser (collectively "Individual Defendants"), and Rosenfeld, Bernstein & Tannenhauser, L.L.P. ("RBT"), the law firm in which the Individual Defendants were general partners. Plaintiff asserts several state law claims arising out of a $650,000 loan plaintiff made to Mad Martha's Ice Cream, Inc. ("Mad Martha's")—a loan which was never repaid because Mad Martha's filed for bankruptcy approximately eight months later. Defendants moved to dismiss the Amended Complaint on several grounds,

one of which was that the claims were time-barred. On March 8, 2001, this Court issued an Opinion and Order which held, *inter alia*, that the claims were timely-filed against all defendants. *See Lewis v. Rosenfeld*, 138 F.Supp.2d 466, 475 (S.D.N.Y.2001) (*"Opinion"*). By letter dated March 13, 2001, defendants moved for reconsideration of that portion of the Opinion that held that the claims against Bernstein and Tannenhauser are timely.[1] Because that portion of the Opinion hinged on a "peculiar and remarkable" turn of events, the full implication of which was not briefed by the parties, reconsideration is granted. *Opinion* at 475.

## I. LEGAL STANDARD

"The standard for granting ... a motion [for reconsideration] is strict, and reconsideration will generally be denied unless the moving party can point to controlling decisions or data that the court overlooked—matters, in other words, that might reasonably be expected to alter the conclusion reached by the court." *Shrader v. CSX Transp., Inc.*, 70 F.3d 255, 257 (2d Cir.1995). "Because the motion does not afford the losing party the right to submit new evidence to bolster relief, parties are not to submit affidavits in support of a [Local] Rule 6.3 motion for reconsideration 'unless directed by the court.' " *First Fin. Ins. Co. v. Allstate Interior Demolition Corp.*, No. 96 Civ. 8243, 1998 WL 567900, at *3 (S.D.N.Y. Sept. 3, 1998). " 'Motions for reconsideration must be narrowly construed and the standard strictly applied to discourage litigants from making repetitive arguments on issues that have been thoroughly considered by the court, to ensure finality, and to prevent the practice of a losing party examining a decision and then plugging the gaps of the lost motion with additional matters.' " *Ackoff–Ortega v. Windswept Pac. Entm't Co.*, 130 F.Supp.2d 440, 443 (S.D.N.Y.2000) (quoting *Polar Int'l Brokerage Corp. v. Reeve*, 120 F.Supp.2d 267, 268–69 (S.D.N.Y.2000) (internal citations omitted)); *see also Shrader*, 70 F.3d at 257 ("[A] motion to reconsider should not be granted where the moving party seeks solely to relitigate an issue already decided.").

## II. DISCUSSION

### A. Background

The underlying facts of this dispute were discussed extensively in the Court's prior opinion and will not be repeated. *See Opinion* at 469–72.[2] However, the procedural history of this case, also recited in detail in the Opinion, is central to the issues being reconsidered.

On May 13, 1996, Lewis sued these defendants, among others, in Texas state court asserting claims arising out of his loan to Mad Martha's. *See id.* at 472. That case was removed to the United States District Court, Southern District of Texas (the "Texas Lawsuit"). Each of the defendants in this case was dismissed from the Texas Lawsuit for lack of personal jurisdiction. *See id.* On January 13, 2000, the Fifth Circuit Court of Appeals affirmed the district court's dismissals. *See id.* The Fifth Circuit's unpublished opinion

---

1. With plaintiff's consent, this Court accepted defendants' March 13, 2001 letter requesting reconsideration as the notice of motion. *See* 3/26/01 Transcript of Hearing at 3–4. Defendants also request, in the alternative, that this Court certify an interlocutory appeal, pursuant to 28 U.S.C. § 1292(b), granting Bernstein and Tannenhauser leave to appeal from the portion of the Opinion concerning the statute of limitations.

2. Although the Opinion does not discuss the underlying facts of the third-party complaint, which was filed on April 3, 2001, those facts are not relevant to this motion and need not be summarized.

stated that "[t]he several rulings by the district court on the personal jurisdiction issue are manifestly correct. The challenge thereto is frivolous." *Id.* On February 17, 2000, the Fifth Circuit denied Lewis' petition for a rehearing en banc. The Fifth Circuit's mandate issued on February 25, 2000.

Over nine months later, on December 1, 2000, the Fifth Circuit sua sponte "recalled" the mandate and "annulled" the administrative dismissal of the entire appeal, stating:

Various filings and the administrative handling thereof have resulted in errors and anomalies, including the inappropriate dismissal of the entire appeal. To correct same the following is ordered and directed:

1. The mandate issued herein is RE-CALLED.

2. The administrative dismissal of the entire appeal based on the order entered herein on January 13, 2000 is ANNULLED.

3. The dismissal of the appeal against Robert Tannenhauser and Robert Bernstein is REAFFIRMED, as is the grant of the bill of costs to them.

4. The appeals as against Eric Rosenfeld [and] Rosenfeld, Bernstein & Tannenhauser, L.L.P. ... are RE-INSTATED; and the grant of Rule 38 damages to said appellees is VA-CATED AND ANNULLED.

*Lewis v. Fresne,* 207 F.3d 659 (5th Cir. 2000), Ex. A to the 12/22/00 Letter of Michael Schneider, counsel for plaintiff. Subsequently, on May 14, 2001, the Fifth Circuit reversed the district court's dismissal of Rosenfeld and RBT, holding that there is sufficient evidence of minimum contacts with Texas to justify personal jurisdiction over these defendants. *See Lewis v. Fresne,* 252 F.3d 352, 358–59 (5th Cir.2001). The Court of Appeals did not address the dismissals of Bernstein and Tannenhauser.

In the Opinion, I concluded that plaintiff filed this action over four years after the latest date on which the claims could have accrued—May 13, 1996, the date on which plaintiff filed the Texas Lawsuit. *See Opinion* at 473. Thus, plaintiff's claims would be barred absent any tolling.[3] However, I also held that plaintiff had satisfied his burden of establishing that the time between the filing of the Texas Lawsuit and the filing of this suit should be tolled pursuant to Texas's "wrong court" tolling statute, Tex.Civ.Prac. & Rem.Code Ann. § 16.064(a) (Vernon 1986).[4] That statute states, in relevant part:

The period between the date of filing an action in a trial court and the date of a second filing of the same action in a different court suspends the running of the applicable statute of limitations for the period if:

(1) because of lack of jurisdiction in the trial court where the action was first filed, the action is dismissed or the judgment is set aside or annulled in a direct proceeding; and

(2) not later than the 60th day after the date the dismissal or other disposition becomes final, the action is commenced in a court of proper jurisdiction.

---

3. The Court applied the Texas statute of limitations for each claim because this is a diversity action and plaintiff's claims accrued "without the state." *Opinion* at 473. Under Texas law, each of plaintiff's claims is governed by a two-year statute of limitations, except for the fraud claim, which is subject to a four-year statute of limitations. *See id.*

4. Statutes tolling the time between the dismissal of one lawsuit and the filing of the second lawsuit are alternatively referred to as "savings" statutes.

Specifically, I held that the sixty-day grace period had not commenced because the dismissal of the Texas Lawsuit was not yet final. *See Opinion* at 475. This holding was based on the December 1, 2000 order of the Fifth Circuit which "annulled" and "nullified" its January 13, 2000 order.[5] *See id.* Moreover, although the December 1, 2000 order "reaffirmed" the prior dismissal of the appeals as against Bernstein and Tannenhauser, I held that this portion of the order was not "final" until plaintiff's time to petition for a writ of certiorari to the Supreme Court expired. *See id.* at 475 n. 13.

Defendants now seek reconsideration of the Court's ruling and advance two arguments: *first,* under Texas law, where a district court's dismissal is affirmed on appeal the dismissal becomes "final" when the district court's determination is entered;[6] *second,* even under the most generous definition of "final", plaintiff did not file this action within sixty days after the dismissals of Bernstein and Tannenhauser became final.

### B. When Does a Dismissal Become "Final"?[7]

### 1. Is a District Court's Dismissal "Final" When It Is Entered?

Defendants contend that where a district court's dismissal is affirmed on appeal the dismissal becomes final when the district court's decision is entered. *See* Defendants' Memorandum of Law in Further Support of Motion for Reconsideration and Certification Pursuant to 28 U.S.C. § 1292(b) ("Def.Mem.") at 6. In support of this proposition, defendants cite two cases, neither of which is persuasive. *First,* defendants cite *Scurlock Oil Co. v. Smithwick,* 724 S.W.2d 1, 6 (Tex.1986) for the proposition that "a judgment is final for purposes of collateral estoppel even if an appeal is pending." Def.Mem. at 4. However, "final is a word of many meanings." *Opinion* at 474 (quotation marks and citation omitted). A decision can be "final" for collateral estoppel purposes but not "final" for the purposes of the "wrong court" tolling statute. *Cf. Lummus Co. v. Commonwealth Oil Ref. Co.,* 297 F.2d 80, 89 (2d Cir.1961) (stating that a decision may be "final" in the context of issue preclusion even though it is not yet "final" for purposes of appeal under 28 U.S.C. § 1291). *Second,* defendants cite *Kaplan v. Clear Lake City Water Auth.,* No. C14–91–01344–CV, 1992 WL 383881, at *5 (Tex. App. Dec. 23, 1992), an unpublished opinion. Texas Rule of Appellate Procedure 47.7, however, bars citation to that opinion because unpublished opinions "have no precedential value and must not be cited as authority by counsel or by a court."[8]

Moreover, defendants' proposed interpretation disregards the language and

---

5. In fact, the January 13, 2000 order was not annulled or nullified. Rather, the Fifth Circuit annulled only the administrative dismissal of the entire appeal based on the January 13, 2000 order.

6. Assuming defendants are correct, the claims against all defendants here, not just those against Bernstein and Tannenhauser, would be untimely.

7. This is a question which neither party addressed in their memoranda of law or supplemental letters accompanying the motion to dismiss. *See Opinion* at 474.

8. Defendants cite *Anastasoff v. United States,* 223 F.3d 898, 900 (8th Cir.2000), for the proposition that a court rule proscribing citation to unpublished decisions is unconstitutional. However, on rehearing en banc, the Eighth Circuit held that the dispute is moot and vacated the panel opinion. *See Anastasoff v. United States,* 235 F.3d 1054, 1056 (8th Cir.2000). As the en banc opinion recognized, the constitutionality of a rule prohibiting citation to unpublished opinions "remains an open question in this Circuit." *Id.*

spirit of section 16.064(a). If the statute's drafters had intended to limit filing of the second action to sixty days from the district court's dismissal, they would not have prescribed that the second action be commenced within sixty days "after the date the dismissal ... *becomes final.*"[9] In addition, section 16.064 is " 'remedial in its every essence [and] should therefore be given a liberal construction with a view of effectuating its manifest objective—relief from [the] penalty of [a] limitation bar to one who has mistakenly brought his action in the wrong court.' " *Opinion* at 474 (quoting *Griffen v. Big Spring Indep. Sch. Dist.*, 706 F.2d 645, 651 (5th Cir.1983) (quotation marks and citation omitted)).

Practical considerations also militate against defendants' interpretation of section 16.064(a). Providing a plaintiff only sixty days from the date of dismissal to file a second action would force a plaintiff into an untenable position. A plaintiff who needs the benefit of section 16.064(a) would have to choose between foregoing his right to appeal the district court's dismissal, and litigating on two fronts—pursuing both the appeal and the new action—an option which is both judicially inefficient and expensive for all parties.

▄ Finally, although the Texas Court of Appeals has remained silent on this issue, *see Opinion* at 474, other Texas courts have considered the date that the dismissal is affirmed on appeal as the key date on which an order of dismissal becomes "final". In *Long Island Trust Co.*

*v. Gemstone Miners, Ltd.*, 57 A.D.2d 889, 394 N.Y.S.2d 407, 407 (1977), the New York Supreme Court dismissed defendant Dicker for lack of personal jurisdiction on April 28, 1976. That decision was affirmed on May 16, 1977. *See id.* The plaintiff subsequently re-filed suit against Dicker in Texas on June 23, 1977. *See Long Island Trust Co. v. Dicker*, 659 F.2d 641, 643 (5th Cir.1981). Although the Texas action was filed over one year after the dismissal by the New York Supreme Court, the Fifth Circuit held that under Tex.Rev.Civ.Stat. Ann. art. 5539a (the predecessor statute to section 16.064) the Texas suit was filed "well within sixty days after the dismissal of Dicker from the New York suit *became final* ".[10] *Id.* (emphasis added). *See also Republic Nat'l Bank of Dallas v. Rogers*, 575 S.W.2d 643, 647–48 (Tex.Civ.App.— Waco 1978) (tolling statute of limitations under article 5539a where second suit was filed more than one year after first suit was dismissed by the federal district court, but less than sixty days after the order of dismissal was affirmed by the Court of Appeals). In short, the earliest date that a dismissal which is later affirmed on appeal becomes "final" is the date of the appellate court's decision.

### 2. Is a District Court's Dismissal "Final" Only After All Discretionary Appeals are Exhausted?

This, however, does not end the inquiry because a dismissal can become "final" either after it is affirmed on appeal or

9. By comparison, section 13–217 of the Illinois Civil Practice Act does not require that the order of dismissal be "final". *See* 735 Ill.Comp.Stat. § 5/13–217 (2000) (tolling the period between the filing of the second action and the first action's dismissal if the plaintiff "commence[s] a new action within one year ... after ... the action is dismissed"). Illinois courts have held that the pendency of the appellate process does not toll the statute of limitations. *See Wade v. Byles*, 295 Ill.App.3d

545, 229 Ill.Dec. 761, 692 N.E.2d 750, 751, *appeal denied*, 178 Ill.2d 597, 232 Ill.Dec. 853, 699 N.E.2d 1038 (1998).

10. Article 5539 does not differ in any material respect from section 16.064. Both statutes require that the second action be filed within sixty days after the "dismissal ... becomes final." Tex.Rev.Civ.Stat.Ann. art. 5539a.

after additional discretionary appeals, such as petitions for a rehearing en banc or for a writ of certiorari to the United States Supreme Court, are denied. Notwithstanding this Court's holding that a dismissal is not "final" until all discretionary appeals have expired, *see Opinion* at 474, upon reconsideration I now conclude that such a broad interpretation is unwarranted. "Although the saving[s] statute is to be liberally construed, its reach is not limitless." *Clary Corp. v. Smith*, 949 S.W.2d 452, 461 (Tex.App.1997). Section 16.064 must be interpreted consistently with the policies behind statutes of limitations:

> Statutes of limitations are primarily designed to assure fairness to defendants. Such statutes promote justice by preventing surprises through the revival of claims that have been allowed to slumber until evidence has been lost, memories have faded, and witnesses have disappeared. The theory is that even if one has a just claim it is unjust not to put the adversary on notice to defend within the period of limitations and that the right to be free of stale claims in time comes to prevail over the right to prosecute them.

*Griffen*, 706 F.2d at 650 (quoting *Dicker*, 659 F.2d at 647 (quotation marks and citation omitted)).

Permitting a plaintiff to repeatedly delay the sixty day limitations period by filing multiple discretionary appeals would defeat both the purposes of section 16.064 and of statutes of limitations generally. A plaintiff would be able to indefinitely extend the limitations period by filing successive discretionary appeals since the denial of each successive appeal would continue tolling the sixty-day limitations period. Such tactical maneuvers would be fundamentally unfair to defendants and would exacerbate the problems associated with stale claims, such as lost evidence, fading memories, and disappearing witnesses. Section 16.064 was not intended to remedy such tactical maneuvers. *Cf. Hotvedt v. Schlumberger Ltd. (N.V.)*, 942 F.2d 294, 297 (5th Cir.1991) ("[E]rrors in ... [counsel's] tactical decisions were not meant to be remedied by the savings statute."); *Clary Corp.*, 949 S.W.2d at 461 (same).

Furthermore, by permitting only sixty days within which to re-file the action in a court of proper jurisdiction, the Texas legislature evidenced its intent to shorten the length of the toll afforded a plaintiff. By comparison, the savings statutes in other states prescribe a considerably longer limitations period during which a plaintiff may re-file the action. *See, e.g.*, Del.Code Ann. tit. 10, § 8117 (one year); Ga.Code.Ann. § 9–2–61 (six months); 735 Ill.Comp.Stat. 5/13–217 (one year); Ohio Rev.Code Ann. § 2305.19 (one year); Tenn.Code.Ann. § 28–1–105 (one year); N.Y.C.P.L.R. § 205(a) (McKinney 1990) (six months); W.Va.Code § 55–2–18 (one year).

A plaintiff should not be permitted to extend the re-filing period beyond the limitations period fixed by section 16.064 by filing one or more discretionary appeals which are later dismissed. Therefore, if presented with the facts of this case, it is likely that the Texas Court of Appeals would hold that a dismissal becomes "final" after it is affirmed on appeal, not after discretionary appeals, such as petitions for rehearing or a writ of certiorari, are denied. *Cf. Glick v. Ballentine Produce, Inc.*, 397 F.2d 590, 594 (8th Cir.1968) (holding that filing of petition for writ of certiorari did not prevent judgment from becoming final for purposes of limitations period of Missouri savings statute, which provided that plaintiff who suffers nonsuit in wrongful death action may commence new action within one year thereafter); *Lehman Bros. v. Hughes Hubbard & Reed, L.L.P.*, 92 N.Y.2d 1014, 1016, 684 N.Y.S.2d 478, 707

N.E.2d 433 (1998) ("It is not the purpose of CPLR 205(a) to permit a party to continually extend the statutory period by seeking additional discretionary appellate review. By contrast, where an appeal is taken as a matter of right, or where discretionary appellate review is granted on the merits, the six-month period does not commence since termination of the prior action has not yet occurred."); *Owens v. Hewell*, 222 Ga.App. 563, 474 S.E.2d 740, 742 (1996) ("[Plaintiffs'] unsuccessful pursuit of a discretionary appeal to the United State Supreme Court did not extend their right to renew their action under OCGA § 9-2-61 [Georgia's savings statute] ... and the six-month renewal period thus ran from the date of the Eleventh Circuit Court of Appeals' affirmance of the trial court's dismissal of their action.").

■ The District Court's orders of dismissal in the Texas Lawsuit were affirmed by the Fifth Circuit on January 13, 2000. However, following the December 1, 2000 order reinstating the appeals as against Rosenfeld and RBT, the Fifth Circuit reversed the district court's order dismissing Rosenfeld and RBT. Therefore, the statute of limitations for plaintiff's claims against Rosenfeld and RBT have been tolled throughout the pendency of the Texas Lawsuit.

■ By contrast, the December 1, 2000 order reaffirmed the prior January 13, 2000 order dismissing the appeals against Bernstein and Tannenhauser. Therefore, the order dismissing Bernstein and Tannenhauser became "final" on January 13, 2000.[11] Having failed to re-file his action sixty days thereafter, plaintiff's claims against Bernstein and Tannenhauser are time-barred.

11. Similarly, the Fifth Circuit's May 14, 2001 opinion stated that the dismissal of the appeal against Tannenhauser and Bernstein occurred on January 13, 2000, not December 1, 2000.

## C. Application Under the Liberal Definition of "Final"

■ Assuming, arguendo, that a dismissal is not "final" until all discretionary appeals—including a petition for a writ of certiorari—have been exhausted, Lewis still failed to file this action less than sixty days after the dismissal of Bernstein and Tannenhauser became "final". Under 28 U.S.C. § 2101(c), a party has ninety days "after entry of ... judgment or decree" to petition the Supreme Court for a writ of certiorari. It is well-established that the ninety days run "from the date of entry of the judgment or order sought to be reviewed, and not from the issuance date of the mandate." 22 *Moore's Federal Practice* § 403.03[3][b][i], at 403–47 (Matthew Bender 3d ed.2000). Moreover, aside from time limitations, there are few technical restrictions on when a party may file a petition for a writ of certiorari. "Cases in the courts of appeals may be reviewed by the Supreme Court by ... writ of certiorari granted upon the petition of any party to any civil or criminal case, before or after rendition of judgment or decree." 28 U.S.C. § 1254(1). As summarized by leading scholars:

> Once a case has come to be in the court of appeals, there is power to issue certiorari without any limitation akin to the much elaborated and significantly reduced requirement of finality imposed on review of state court judgments. Certiorari may be granted to review decisions that do not dispose of the pending litigation, to examine orders that go merely to procedural steps before the court of appeals, or to decide a case that

*See Lewis*, at 356 n. 2 ("This Court dismissed the appeal against Tannenhauser and Bernstein in a January 13, 2000 order.").

has not even been considered by the court of appeals.

17 Charles A. Wright, Arthur R. Miller & Edward H. Cooper, *Federal Practice and Procedure: Jurisdiction 2d* § 4036, at 19 (1988).

■ Following the Fifth Circuit's January 13, 2000 order affirming the dismissals of Bernstein, Tannenhauser, and RBT, plaintiff filed a timely petition for a rehearing en banc. That petition was denied on February 17, 2000. Lewis' time to file a petition for certiorari expired ninety days later, on May 17, 2000. *See Young v. Harper*, 520 U.S. 143, 147 n. 1, 117 S.Ct. 1148, 137 L.Ed.2d 270 (1997) ("A timely filed petition for rehearing will toll the running of the 90–day period for filing a petition for certiorari until disposition of the rehearing petition."). With respect to Bernstein and Tannenhauser, this is the latest date on which the dismissals became "final". Plaintiff, therefore, had until July 17, 2000—sixty days after Lewis' time to petition for a writ of certiorari expired—to file this action. Having filed this action on July 20, 2000, plaintiff failed to file within the statutory limitations period, even under the most generous definition of the term "final".

■ Plaintiff, however, contends that he may still file a petition for certiorari based on the Fifth Circuit's December 1, 2000 order reaffirming the dismissal of the appeal against Bernstein and Tannenhauser. Plaintiff is mistaken. The Supreme Court has long held that:

the mere fact that a judgment previously entered has been reentered or revised in an immaterial way does not toll the time within which review must be sought. Only when the lower court changes matters of substance, or resolves a genuine ambiguity, in a judgment previously rendered should the period within which an appeal must be taken or a petition for certiorari filed begin to run anew. The test is a practical one. The question is whether the lower court, in its second order, has disturbed or revised legal rights and obligations which, by its prior judgment, had been plainly and properly settled with finality.

*Federal Trade Commission v. Minneapolis–Honeywell Regulator Co.*, 344 U.S. 206, 211–12, 73 S.Ct. 245, 97 L.Ed. 245 (1952). Because the December 1, 2000 order in no way affected the portion of the January 13, 2000 order dismissing the appeals against Bernstein and Tannenhauser, Lewis' time to petition for a writ of certiorari did not restart with the December 1, 2000 order.[12]

In sum, assuming, arguendo, that a dismissal is not "final" under section 16.064(a) until all avenues of appellate review, including a petition for a writ of certiorari, have expired, plaintiff failed to file a second action within the sixty day limitations period prescribed by section 16.064. Accordingly, the claims against Bernstein and Tannenhauser are untimely.

## III. CONCLUSION

For the reasons stated above, reconsideration is granted and the claims against Bernstein and Tannenhauser are dismissed as time-barred.[13] The conference currently scheduled for August 16, 2001 is rescheduled for May 31, 2001 at 4:30 p.m. to discuss how this case shall proceed in

---

12. The Fifth Circuit regards the January 13, 2000 order, not the December 1, 2000 order, as the order finally dismissing Bernstein and Tannenhauser. *See supra* note 10.

13. Accordingly, defendants' request that this Court certify an interlocutory appeal is moot.

light of the Fifth Circuit's May 14, 2001 opinion.