# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**FILED**

December 22, 2014

No. 14-40251

Lyle W. Cayce
Clerk

T. J. AGENBROAD; JAMES ALIBRI; MARGARETHE L. ALLEN; JOHN ANDERSON; LANA M. ANDERSON; ET AL,

      Plaintiffs - Appellants

v.

J. A. MCENTIRE; BIG ROCK PETROLEUM, INCORPORATED,

      Defendants - Appellees

Appeal from the United States District Court
for the Eastern District of Texas
USDC No. 4:12-CV-480

Before KING, DENNIS, and CLEMENT, Circuit Judges.

PER CURIAM:*

      Plaintiffs-Appellants appeal the district court's order granting summary judgment for Defendants-Appellees J.A. McEntire and Big Rock Petroleum, Inc., on the grounds that the statute of limitations had run. Plaintiffs-Appellants argue that Texas Civil Practice and Remedies Code Sections 16.063

---

      * Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

and 16.064 apply to toll the limitations period as does equitable tolling.  For the reasons that follow, we AFFIRM.

## I.     Factual and Procedural Background

Appellants (the "Investors") are 238 investors in an alleged oil and gas Ponzi scheme run by Appellees, J.A. McEntire and Big Rock Petroleum, Inc. (collectively, "Big Rock").  Investors allege that this Ponzi scheme cost them over $24,000,000 in losses.

After the scheme was uncovered, Investors formed the Big Rock Investors Association ("BRIA") to bring claims on their behalf against Big Rock.  BRIA filed suit against Big Rock in state court in 2005, alleging violations of the Texas Securities Act.  In 2006, Big Rock filed a plea to the jurisdiction, challenging BRIA's standing and thereby also challenging the subject matter jurisdiction of the state court.  Later that year, Big Rock moved to abate the state court proceedings, arguing that the Federal Bureau of Investigation's seizure of Big Rock's records and a pending bankruptcy proceeding prevented the adjudication of the lawsuit.  The state court granted the motion to abate.

In late 2010, the state court reactivated the suit.  The next year, the state court denied Big Rock's still-outstanding plea to the jurisdiction; however, the court reconsidered and granted the plea to the jurisdiction in 2012.  BRIA appealed.  After some delay due to pending claims in the state trial court, the Texas Court of Appeals affirmed the district court's dismissal.  *Big Rock Investors Ass'n v. Big Rock Petroleum, Inc.*, 409 S.W.3d 845, 853 (Tex. App.—Fort Worth 2013, pet. denied).

Meanwhile, in July 2012, Investors filed the present suit in the United States District Court for the Eastern District of Texas, two months before the judgment in the state trial court became final.  The present suit concerns the

same claims as the state court lawsuit, but the present lawsuit was filed with the individual investors named as plaintiffs—not BRIA.

Big Rock moved for summary judgment in the district court, arguing that Investors' claims were time-barred.  Investors replied by asserting that the statute of limitations should be tolled under Texas Civil Practice and Remedies Code Sections 16.063, 16.064, and the doctrine of equitable tolling.  On recommendation of the magistrate judge, the district court rejected those arguments and granted summary judgment.  Investors timely appealed.

## II.    Texas Civil Practice & Remedies Code Section 16.063

We review a district court's grant of summary judgment *de novo*, and apply the same standard on appeal as applied by the district court.  *Rogers v. Bromac Title Servs., L.L.C.*, 755 F.3d 347, 350 (5th Cir. 2014).

Investors first argue that Texas Civil Practice and Remedies Code Section 16.063 tolls the statute of limitations.  That section provides: "The absence from this state of a person against whom a cause of action may be maintained suspends the running of the applicable statute of limitations for the period of the person's absence."  Tex. Civ. Prac. & Rem. Code § 16.063.  Under Texas law, while the plaintiff bears the ultimate burden of proof at trial to prove a tolling provision, the burden on summary judgment differs.  *Woods v. William M. Mercer, Inc.*, 769 S.W.2d 515, 518 (Tex. 1988).  On summary judgment, once the non-movant "asserts that a tolling provision applies, the movant must conclusively negate the tolling provision's application to show his entitlement to summary judgment."  *Jennings v. Burgess*, 917 S.W.2d 790, 793 (Tex. 1996); *see also Zale Corp. v. Rosenbaum*, 520 S.W.2d 889, 891 (Tex. 1975).

3

No. 14-40251

We assume without deciding that the Texas summary judgment standard applies in this case, as doing so does not affect our decision.[1]

Investors, relying on *Kerlin v. Sauceda*, 263 S.W.3d 920 (Tex. 2008), and *Ashley v. Hawkins*, 293 S.W.3d 175 (2009), argue that section 16.063 applies here, because Big Rock—who is a non-resident—was absent from the state during the limitations period. In *Kerlin* and *Ashley*, the Texas Supreme Court held that a non-resident is "present" within the state under section 16.063 whenever he is amenable to service of process through the Texas long-arm statute and has sufficient contacts with Texas to create personal jurisdiction. *Kerlin*, 263 S.W.3d at 927; *Ashley*, 293 S.W.3d at 179. As such, as long as the defendant is subject to the long-arm statute and the Texas courts have personal jurisdiction over him, he is not absent from the state under 16.063 and the limitations period is not tolled. *Kerlin*, 263 S.W.3d at 927; *Ashley*, 293 S.W.3d at 179. Investors argue as follows: Big Rock's assertions at prior stages of this litigation that Texas did not have personal jurisdiction over it estop it from disputing its "absence" from the state for purposes of section 16.063. Investors assert that, given those prior assertions, the statute of limitations was tolled for the duration of Big Rock's absence from Texas.

---

[1] We note that the precedent in this circuit is in conflict on the issue of whether to apply the Texas "conclusively negate" summary judgment standard or the federal standard, which would not impose that burden on the moving party. *Compare Fed. Deposit Ins. Corp. v. Shrader & York*, 991 F.2d 216, 220 (5th Cir. 1993) (applying the federal summary judgment rule), *and John G. Mahler Co. v. Klein Karoo Landboukooperasie DPK*, No. 94-10635, 1995 WL 371037, at *3 n.2 (5th Cir. June 5, 1995) (unpublished) (same), *with Bridges v. Metabolife Int'l, Inc.*, 119 F. App'x 660, 664 (5th Cir. 2005) (applying the Texas summary judgment rule), *Texas Soil Recycling, Inc. v. Intercargo Ins. Co.*, 273 F.3d 644, 649 (5th Cir. 2001) (same), *Geraghty & Miller, Inc. v. Conoco, Inc.*, 234 F.3d 917, 932 (5th Cir. 2000), *abrogated on other grounds by Burlington N. & Santa Fe Ry. Co. v. United States*, 556 U.S. 599 (2009), *Harbor Ins. Co. v. Urban Constr. Co.*, 990 F.2d 195, 200 (5th Cir. 1993) (same), *and Saenz v. Keller Indus. of Tex., Inc.*, 951 F.2d 665, 667 (5th Cir. 1992).

No. 14-40251

Yet Section 16.063 generally does not apply to non-residents of Texas. *Jackson v. Speer*, 974 F.2d 676, 678–79 (5th Cir. 1992). There are, however, two exceptions to that general rule. *Id.* at 679. First, the tolling provision applies to non-residents who were present in Texas when they contracted for the debt sued upon. *Id.* Second, the provision applies to non-residents who were present in Texas when the cause of action sued upon accrued. *Id.* Neither *Kerlin* nor *Ashley* abrogated the general rule that section 16.063 does not apply to non-residents; rather, *Kerlin* and *Ashley* speak to when non-residents—who meet one of the two exceptions—are "present" in or "absent" from the state for tolling purposes. *See Kerlin*, 263 S.W.3d at 927–28; *Ashley*, 293 S.W.3d at 179; *see also Medina v. Tate*, 438 S.W.3d 583, 589 (Tex. App.—Houston [1st Dist.] 2013, no pet.) (noting that *Kerlin* and *Ashley* "involved nonresident defendants who had committed acts in Texas forming the basis of the suits against them"). As such, in order for *Kerlin* and *Ashley* to come into play, one of the two exceptions to the general rule exempting non-residents from section 16.063 tolling must first apply. Investors do not argue on appeal that either exception applies[2] or that the district court erred in failing to hold Big Rock to its burden to conclusively negate the applicability of either of those exceptions. Rather, their argument is only that, under *Kerlin* and *Ashley*, section 16.063 does in fact apply to non-residents. As we conclude that is an overly broad reading of *Kerlin* and *Ashley*, Investors' argument fails. As such, they have failed to demonstrate that the district court erred in ruling that, as Big Rock is a non-resident, section 16.063 did not apply here. *Sanders v. Unum Life Ins. Co. of*

---

[2] Although in their sur-reply to the motion for summary judgment below, Investors asserted that "Section 16.063 applies to a non-resident who was present in Texas when the cause of action arose," they make no such argument in their brief on appeal.

*Am.*, 553 F.3d 922, 926 (5th Cir. 2008) ("A party waives an issue if he fails to adequately brief it on appeal." (internal quotations marks omitted)).

### III.    Texas Civil Practice & Remedies Code Section 16.064

Investors also argue that the statute of limitations should be tolled under Texas Civil Practice and Remedies Code Section 16.064.  That section provides:

> (a) The period between the date of filing an action in a trial court and the date of a second filing of the same action in a different court suspends the running of the applicable statute of limitations for the period if:
>
>> (1) because of lack of jurisdiction in the trial court where the action was first filed, the action is dismissed or the judgment is set aside or annulled in a direct proceeding; and
>>
>> (2) not later than the 60th day after the date the dismissal or other disposition becomes final, the action is commenced in a court of proper jurisdiction.
>
> (b) This section does not apply if the adverse party has shown in abatement that the first filing was made with intentional disregard of proper jurisdiction.

Tex. Civ. Prac. & Rem. Code § 16.064.  Investors contend that their federal lawsuit falls within this provision because: (1) their suit in state court was dismissed for lack of subject matter jurisdiction, and (2) they filed this suit within sixty days of the date the dismissal of the state court suit became final. Big Rock replies that the statute applies only to suits that are dismissed for lack of subject matter jurisdiction because they are filed in the "wrong court," not suits that are otherwise dismissed for lack of jurisdiction.

In interpreting Texas law, we begin by determining whether there is a final decision by the Texas Supreme Court on point.  *Hodges v. Mack Trucks, Inc.*, 474 F.3d 188, 199 (5th Cir. 2006).  If there is not, as is the case here, we must make an "*Erie* guess" as to how the Texas Supreme Court would resolve

the issue. *Am. Int'l Specialty Lines Ins. Co. v. Rentech Steel, L.L.C.*, 620 F.3d 558, 564 (5th Cir. 2010). To inform our decision, we look to:

> (1) decisions of the [Texas] Supreme Court in analogous cases, (2) the rationales and analyses underlying [Texas] Supreme Court decisions on related issues, (3) dicta by the [Texas] Supreme Court, (4) lower state court decisions, (5) the general rule on the question, (6) the rulings of courts of other states to which [Texas] courts look when formulating substantive law and (7) other available sources, such as treatises and legal commentaries.

*Id.* (alterations in original) (internal quotation marks omitted). Here, there is no Texas Supreme Court case directly on point nor is there a decision in a sufficiently analogous case. Yet the "rationales and analyses" applied by the Texas Supreme Court provide significant guidance in interpreting section 16.064. *Id.* "When we interpret a Texas statute, we follow the same rules of construction that a Texas court would apply—and under Texas law the starting point of our analysis is the plain language of the statute." *Forte v. Wal-Mart Stores, Inc.*, 763 F.3d 421, 427 (5th Cir. 2014) (internal quotation marks omitted).

The plain language of section 16.064 indicates that it is meant to apply only where the plaintiff's suit was filed in the "wrong court." While subsection 16.064(a)(1) is ambiguous as to what is meant by a "lack of jurisdiction in the trial court," that ambiguity is resolved by subsection 16.064(a)(2). Subsection (a)(2) states that the plaintiff has sixty days to refile in "a court of proper jurisdiction." As "proper jurisdiction" modifies "court" in that subsection, the plain language of the statute refers to actions dismissed due to a limitation of the jurisdiction in the first court, not situations where the action was dismissed for lack of standing to sue, as here. Such a reading also comports with dicta from the Texas Supreme Court. In *In re United Services Automobile Ass'n*, the Texas Supreme Court noted that section 16.064 was enacted in order to

address the "antiquated jurisdictional patchwork" of trial court subject matter jurisdiction in Texas. *In re United Servs. Auto. Ass'n*, 307 S.W.3d 299, 304 (Tex. 2010). The Texas Supreme Court noted that Texas's "court system has been described as one of the most complex in the United States, if not the world," *id.* (internal quotation marks omitted), and outlined the varying (and inconsistent) jurisdictional limitations of Texas's nine different types of trial courts, *id.* at 302 ("Texas has some 3,241 trial courts within its 268,580 square miles. Jurisdiction is limited in many of the courts; it is general in others." (footnotes omitted)); *id.* at 303 ("We have at least nine different types of trial courts, although that number does not even hint at the complexities of the constitutional provisions and statutes that delineate jurisdiction of those courts.").

Further, decisions of the Texas Court of Appeals reinforce our understanding of section 16.064. In *Clary Corp. v. Smith*, the Texas Court of Appeals held that section 16.064 did not apply to toll the statute of limitations when, after the defendants' counterclaims were dismissed as the damages claimed were over the jurisdictional limit of the county court, they refiled those same counterclaims seeking a lesser amount in damages. *Clary Corp. v. Smith*, 949 S.W.2d 452, 461 (Tex. App.—Fort Worth 1997, pet. denied). Construing the language of section 16.064, the court stated that "[t]he plain language of both section 16.064 ('second filing . . . in a different court') and its predecessor ('commencement in the second court') indicates that the legislature intended the saving statute to apply only to cases refiled in a different court after dismissal, not in the same court." *Id.* at 460. Further, because the plaintiff could have amended his pleadings to come within the court's jurisdiction, "the party would not be in the wrong court and would not suffer the 'penalty of limitation bar' that section 16.064 is designed to protect

against." *Id.* at 461. Similarly, the Texas Court of Appeals declined to apply section 16.064 to toll the statute of limitations where the plaintiff had originally filed suit under sections 1983 and 1981 in federal court and, after dismissal, filed state law tort causes of action for the same incident in state court. *Turner v. Tex. Dep't of Mental Health & Mental Retardation*, 920 S.W.2d 415, 417 (Tex. App.—Austin 1996, writ denied). In determining whether the federal and state suits were the "same action" under section 16.064, the court noted that "[t]he statute is designed to protect litigants who mistakenly file their action in the wrong court." *Id.* at 419. But because the plaintiff "could not have maintained his § 1981 and § 1983 causes of action in either state or federal court," section 16.064 did not apply. *Id.* The court reasoned that "[r]ather than mistakenly filing his action in the wrong court, Turner simply filed the wrong cause of action, regardless of where it was filed. This mistake is beyond the scope and purpose of the tolling provision at issue." *Id.*; *see also Bell v. Moores*, No. 01-94-00826-CV, 1996 WL 74099, at \*5 (Tex. App.—Houston [1st Dist.] 1996, no writ) (unpublished) ("In the present case, the trial court in the first suit did not lack jurisdiction because Wanda had filed her intervention in the *wrong court*; rather, the trial court lacked jurisdiction over Wanda's claim because she did not have standing to bring it.").

Additionally, Investors' reliance on *Brown v. Fullenweider*, 135 S.W.3d 340 (Tex. App.—Texarkana 2004, pet. denied), *Long Island Trust Co. v. Dicker*, 659 F.2d 641 (5th Cir. Unit A Oct. 1981), and *Griffen v. Big Spring Independent School District*, 706 F.2d 645 (5th Cir. 1983), is misplaced. While *Brown* certainly rejected the so-called "wrong court" interpretation of section 16.064, *Brown*, 135 S.W.3d at 345–46, we find the opinion unpersuasive in light of the plain language of the statute and the Texas Supreme Court's recent dicta in *United Services*, as discussed *supra*. Further, *Dicker* is wholly distinguishable

from this case.  In *Dicker*, we held that the predecessor to section 16.064 applied to an action dismissed for lack of personal jurisdiction in another state, then refiled within sixty days in federal court in Texas.  *Dicker*, 659 F.2d at 647.  *Dicker* therefore does not speak to situations where, as here, the first lawsuit was dismissed for lack of standing, and jurisdiction would not have been proper in any court.  As to *Griffen*, the plaintiff's claims there were dismissed in the state court action because of a failure to exhaust state administrative remedies before the plaintiff filed his constitutional claims in federal court.  *Griffen*, 706 F.2d at 648.  Here, by contrast, Investors made a strategic decision to use an unconventional litigation vehicle to bring their claims—a strategic decision that carried a risk of a dismissal for lack of standing.  The failure of that strategy is not the type of dismissal for which section 16.064 provides a remedy.  *See Hotvedt v. Schlumberger Ltd. (N.V.)*, 942 F.2d 294, 297 (5th Cir. 1991) ("But for counsel's tactical decision, prematurely and voluntarily to dismiss the California suit, the Hotvedts could have proceeded to press their claims against STC in South America, or indeed, could have appealed to the higher California courts for relief. It is clear, however, that errors in such tactical decisions were not meant to be remedied by the savings statute.").

As such, section 16.064 does not operate to toll the statute of limitations. Investors elected to proceed in the state court by suing through BRIA, and they elected not to bring suit individually prior to the running of the statute of limitations.  Proceeding with that strategy involved a calculated risk that BRIA may be held not to have standing.  The problem with Investors' first lawsuit was therefore not the jurisdiction of the Texas courts; rather, it was the lack of standing of the plaintiff-association.  As such, section 16.064 does

10

No. 14-40251

not toll the statute of limitations in this case, and we affirm the district court's grant of summary judgment as to that section.

## IV.    Equitable Tolling

Lastly, the district court did not err in declining to apply equitable tolling.  We review a district court's decision regarding equitable tolling for abuse of discretion.  *Granger v. Aaron's, Inc.*, 636 F.3d 708, 712 (5th Cir. 2011).  Equitable tolling is to be applied only in "rare and exceptional circumstances."  *Harris v. Boyd Tunica, Inc.*, 628 F.3d 237, 239 (5th Cir. 2010) (internal quotation marks omitted).  Additionally, "[a] petitioner's failure to satisfy the statute of limitations must result from external factors beyond his control; delays of the petitioner's own making do not qualify."  *In re Wilson*, 442 F.3d 872, 875 (5th Cir. 2006).  Further, we are "reluctant to apply equitable tolling to situations of attorney error or neglect, because parties are bound by the acts of their lawyer."  *Granger*, 636 F.3d at 712.

Investors make two arguments that equitable tolling should apply in this instance.  First, they argue that equitable tolling applies because they filed their claims within the limitations period and diligently pursued their claims thereafter.  Second, they argue that extraordinary circumstances prevented them from pursuing their claims within the statutory period.  Neither argument persuades us that the district court abused its discretion here.

To support their first argument, Investors rely on *Burnett v. New York Central Railroad Co.*, 380 U.S. 424 (1965), and *Granger*.  *Burnett* is inapposite, as it turned on consideration of the congressional policies underlying FELA and the necessity of a uniform rule governing tolling in FELA cases.  *See Burnett*, 380 U.S. at 432–33.  *Granger* is similarly unavailing.  In *Granger*, the plaintiff had mistakenly believed that filing a complaint with one federal agency was sufficient to begin its lawsuit—in reality, the plaintiff had filed his

claim with the wrong agency. *Granger*, 636 F.3d at 710. By the time the mistake was corrected, the limitations period had expired. *Id.* This court held that the district court did not abuse its discretion in tolling the statute of limitations, because the plaintiff had brought a claim, albeit a defective one, within the statutory period and exercised diligence thereafter. *Id.* at 713. This is, however, an altogether different case. The delay in filing claims in the names of the individual plaintiffs was the result of a calculated litigation strategy—to employ an unincorporated association as the vessel for vindicating Investors' claims. They were aware that their strategy was being challenged in the state court almost from the beginning. Yet Investors chose not to bring a lawsuit naming Investors individually as plaintiffs until after the associational standing issue had been resolved in the state court system. That it was the risk of their strategy that came to fruition—and not the reward—does not mandate the intervention of equity to revive their claims.

We also reject Investors' second argument for equitable tolling. Investors argue that the FBI's seizure of Big Rock's records, and the resulting abatement of the state court action, is an extraordinary circumstance mandating equitable tolling. Yet the FBI's seizure of the records only affected the *resolution* of the plea in abatement challenging BRIA's associational standing. It did not prevent Investors from bringing suit individually. Equitable tolling is not an insurance policy for the risks that accompanied Investors' "wait-and-see" approach to BRIA's standing.

## V.     Conclusion

For the foregoing reasons, the judgment of the district court is AFFIRMED.

No. 14-40251

EDITH BROWN CLEMENT, Circuit Judge, concurring in part and concurring in the judgment:

I concur with the majority as to Parts I and III-V and in the judgment. I write separately because I disagree with the majority's reasoning in Part II and would affirm the district court on different grounds.

As the majority explains, Tex. Civ. Prac. & Rem. Code § 16.063 does not generally apply to non-residents. This general rule is subject to two exceptions. *See supra* pp. 4-5. The majority states that "Investors does not argue on appeal . . . that the district court erred in failing to hold Big Rock to its burden to conclusively negate the applicability of either of those exceptions." *Id.* I respectfully disagree.

Under Texas law, once Investors asserted that section 16.063 applied, the burden shifted to Big Rock to conclusively negate the provision's application. *See supra* note 1 and accompanying text.[1] In their appellate brief, Investors argues that Big Rock "had the burden to conclusively negate Appellants' reliance on Section 16.063," and that they "failed to carry this burden." [Appellant's Br. 12] Reading Investors' brief in light of Texas law, it asserts precisely the argument that the majority states is missing.

Nevertheless, I would dismiss Investors' appeal as to section 16.063 because Investors failed to present the questions argued on appeal to the

---

[1] At least one Texas case holds that, when a party asserts that a tolling statute applies, but fails to allege that one of the non-resident exceptions applies, the other party is not required to conclusively negate the application of the tolling provision. *See Guardia v. Kontos*, 961 S.W.2d 580, 585 (Tex. App.—San Antonio 1997, no pet.) ("Guardia did not assert in her summary judgment response that Kontos, the executor and appellee, was present in the state when the accident occurred, and Kontos was not required to negate an issue that Guardia *could* have raised."). But Big Rock never referred us to *Guardia* or argued that it did not bear the burden to conclusively negate the application of section 16.063.

district court. Investors makes two arguments as to section 16.063. They argue that Big Rock failed to carry its burden to conclusively negate the application of section 16.063, and that the district court erred when it held that section 16.063 does not apply to non-residents. [Appellant's Br. 12]

Big Rock argues that Investors waived these arguments because they failed to present them to the district court. I agree. Investors never presented the burden of proof issue to the district court. While Investors mentioned the issue in passing in their summary judgment briefs and objections to the magistrate judge's report and recommendation, their arguments focused on Big Rock's burden to negate the application of the discovery rule. Accordingly, the district court addressed the burden of proof issue only as to the discovery rule. [R. at 2396–97.] Investors also failed to present the non-resident issue to the district court. The magistrate judge held that section 16.063 does not generally apply to non-residents like Big Rock. [R. at 2345 (noting same and citing *Medina v. Tate*, 438 S.W.3d 583, 588–89 (Tex. App.—Hous. [1st Dist.] 2013, no pet.))] Investors never challenged this holding, and the district court affirmed without specific comment.

"It is well settled in this Circuit that the scope of appellate review on a summary judgment order is limited to matters presented to the district court." *Keelan v. Majesco Software, Inc.*, 407 F.3d 332, 339 (5th Cir. 2005). "If a party wishes to preserve an argument for appeal, the party 'must press and not merely intimate the argument during the proceedings before the district court.'" *Id.* (quoting *N.Y. Life Ins. Co. v. Brown*, 84 F.3d 137, 141 n.4 (5th Cir. 1996)). "An argument must be raised 'to such a degree that the district court has an opportunity to rule on it.'" *Id.* (quoting *N.Y. Life*, 84 F.3d at 141 n.4).

No. 14-40251

I would hold that Investors failed to present the questions on appeal to the district court. Accordingly, I would affirm the district court's judgment as to section 16.063.