ROBERT PITMAN, UNITED STATES DISTRICT JUDGE
Before the Court are Plaintiffs Cathi Cleven, Tara Cleven, Areli Arellano, Joe L. Martinez, and a class of similarly situated tenants' (collectively, "Plaintiffs")[1] Second *607 Motion for Partial Summary Judgment, (Dkt. 137), Defendants' Motion for Summary Judgment, (Dkt. 204), and the parties' responsive briefing. Each party argues that they are entitled to summary judgment on Plaintiffs' sole claim: that Defendants' apartment late fees violated the Texas Property Code § 92.019. Having considered the parties' arguments, the evidence, and the relevant law, the Court will grant Plaintiffs' motion and deny Defendants' motion.
I. BACKGROUND
Plaintiffs are current and former tenants of Defendants' residential apartment communities throughout Texas. Defendants are Mid-America Apartment Communities Inc. and Mid-America Apartments, LP, (together, "MAA"), and MAA's predecessor in interest, CMS/Colonial Multifamily Canyon Creek JV LP ("Colonial") (collectively, "Defendants"). MAA and Colonial merged in 2013. (Form 10-K, Dkt. 126-22, at 3). Prior to the merger, MAA and Colonial applied different late fee structures. (Pls.' Mot. Summ. J., Dkt. 137, at 8-9). Colonial generally charged late fees according to a $75/$10 fee structure for tenants who paid rent late, which applied a $75 initial fee and an added fee of at least $10 for each additional day late ("the $75/$10 fee"). (Pls.' Mot. Summ. J., Dkt. 137, at 8; Ellsberry Dep., Dkt. 137-3, at 11). MAA typically charged a similar $50/$10 late fee structure, with $50 as the initial late fee and $10 for each additional day late. (Ellsberry Dep., Dkt. 137-3, at 11.). These late fee policies were largely uniform across Texas for each company immediately prior to the merger. (Id. ). After merging in 2013, Defendants harmonized the late fee policy according to the $75/$10 fee structure all Texas properties. (Pls.' Mot. Summ. J., Dkt. 137, at 8-9; Ellsberry Dep., Dkt. 137-3, at 11).
Plaintiffs allege that Defendants' late fee policy violates Texas Property Code § 92.019, which provides that "a landlord may not charge a tenant a late fee for failing to pay rent unless ... the fee is a reasonable estimate of uncertain damages to the landlord that are incapable of precise calculation and result from late payment of rent." (Pls.' Mot. Summ. J., Dkt. 137, at 7-8; Second Am. Compl., Dkt. 36, at 20 (citing TEX. PROP. CODE § 92.019(a)(2) ) ). The statute further provides: "A landlord who violates this section is liable to the tenant for an amount equal to the sum of $100, three times the amount of the late fee charged in violation of this section, and the tenant's reasonable attorney's fees." Id. at § 92.019(c). The statute invalidates any lease term "that purports to waive a right or exempt a party from a liability under this section." Id. at § 92.019(d).
Both parties now seek summary judgment on the issue of Defendants' liability under Section 92.019. (Pls.' Mot. Summ. J., Dkt. 137; Defs.' Mot. Summ. J., Dkt. 204).
II. LEGAL STANDARD
Summary judgment is appropriate under Rule 56 of the Federal Rules of Civil Procedure only "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A dispute is genuine only if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. Anderson v. Liberty Lobby, Inc. , 477 U.S. 242, 254, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). "A fact issue is 'material' if its resolution could affect the outcome *608 of the action." Poole v. City of Shreveport , 691 F.3d 624, 627 (5th Cir. 2012).
The party moving for summary judgment bears the initial burden of "informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett , 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The burden then shifts to the nonmoving party to establish the existence of a genuine issue for trial. Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp. , 475 U.S. 574, 585-87, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986) ; Wise v. E.I. DuPont de Nemours & Co. , 58 F.3d 193, 195 (5th Cir. 1995). "A party opposing a properly supported motion for summary judgment may not rest upon the mere allegations or denials of his pleading, but ... must set forth specific facts." Anderson , 477 U.S. at 248, 106 S.Ct. 2505 (citations and quotation marks omitted). After the nonmovant has been given the opportunity to raise a genuine factual issue, if no reasonable juror could find for the nonmovant, summary judgment will be granted. Miss. River Basin Alliance v. Westphal , 230 F.3d 170, 175 (5th Cir. 2000). Cross-motions for summary judgment "must be considered separately, as each movant bears the burden of establishing that no genuine issue of material fact exists and that it is entitled to judgment as a matter of law." Shaw Constructors v. ICF Kaiser Engineers, Inc. , 395 F.3d 533, 538-39 (5th Cir. 2004).
III. DISCUSSION
A. Plaintiffs' Motion for Summary Judgment
Section 92.019 provides that "[a] landlord may not charge a tenant a late fee for failing to pay rent unless ... the fee is a reasonable estimate of uncertain damages to the landlord that are incapable of precise calculation and result from late payment of rent." TEX. PROP. CODE § 92.019(a)(2). Plaintiffs argue that Defendants are liable under the statute as a matter of law because Section 92.019 requires a landlord to estimate his or her damages before charging a late fee, and Defendants failed to make any estimate at all prior to setting their fees. (Pls.' Mot. Summ. J., Dkt. 137, at 17-19, 22). Defendants dispute both premises. Defendants argue that Section 92.019 does not require landlords to conduct a prospective estimate of damages prior to charging late fees, but even if it does, there is a genuine issue of material fact concerning whether Defendants conducted a prospective estimate. (Defs.' Resp. Pls.' Mot. Summ. J., Dkt. 155, at 8, 13).
A. Construing Section 92.019
In this diversity action, the Court's task is to apply Texas law as interpreted by Texas state courts. Mid-Continent Cas. Co. v. Swift Energy Co. , 206 F.3d 487, 491 (5th Cir. 2000). To determine state law, the Court would ordinarily look to final decisions of the Texas Supreme Court or, in the absence of such decisions, to decisions of Texas' intermediate appellate courts for guidance. See Howe ex rel. Howe v. Scottsdale Ins. Co. , 204 F.3d 624, 627 (5th Cir. 2000). The parties have cited no Texas state court decisions interpreting Section 92.019, and the Court is aware of none. (See, e.g. , Defs.' Resp. Pl.'s Mot. Class Cert, Dkt. 129, at 38 n.17 (stating that "[t]he only reported case citing to [Section] 92.019 is Olley v. HVM, L.L.C. , 449 S.W.3d 572, 576 (Tex. App.-Houston 2014)"); Olley , 449 S.W.3d at 576 (rejecting an argument that Section 92.019 entitled a hotel guest to possession of his room, but not otherwise interpreting the statute) ). In the absence of state-court authority, the Court's "primary obligation is to make an Erie guess as to how the [Texas] Supreme *609 Court would decide the question before" the Court. Keen v. Miller Envtl. Grp., Inc. , 702 F.3d 239, 243 (5th Cir. 2012). When making an Erie guess, the Court's task "is to attempt to predict state law, not to create or modify it." Id. (citation and quotation marks omitted).
In order to properly predict the interpretation of a Texas statute, the Court "follow[s] the same rules of construction that a Texas court would apply-and under Texas law the starting point of [a court's] analysis is the plain language of the statute." Agenbroad v. McEntire , 595 F. App'x 383, 387 (5th Cir. 2014) ; see also Galbraith Eng'g Consultants, Inc. v. Pochucha , 290 S.W.3d 863, 867 (Tex. 2009) ("In construing statutes, the Court's "primary objective is to give effect to the Legislature's intent as expressed in the statute's language.") (citing TEX. GOV'T CODE § 312.005 ). "If the words of a statute are clear and unambiguous," then the Texas Supreme Court will "apply them according to their plain and common meaning." Id. (citing City of Rockwall v. Hughes , 246 S.W.3d 621, 625-26 (Tex. 2008) ). "Whether statutory language is ambiguous is a matter of law for courts to decide, and language is ambiguous only if the words yield more than one reasonable interpretation." Sw. Royalties, Inc. v. Hegar , 500 S.W.3d 400, 405 (Tex. 2016). Words and phrases should "be read in context and construed according to the rules of grammar and common usage." Cadena Comercial USA Corp. v. Texas Alcoholic Beverage Comm'n , 518 S.W.3d 318, 325 (Tex. 2017). "To determine a statutory term's common, ordinary meaning," the Texas Supreme Court "typically look[s] first to [the term's] dictionary definitions." City of Richardson v. Oncor Elec. Delivery Co. LLC , 539 S.W.3d 252, 261 (Tex. 2018).
Courts must strictly construe a penal statute such that any ambiguities are resolved in favor of the penalized party.[2] Hovel v. Batzri , 490 S.W.3d 132, 136 (Tex. App.-Houston [1st Dist.] 2016, pet. denied). In this context, "[s]trict construction ... does not mean that each individual term must be read narrowly. It means that, when a statutory provision is unclear, the statute is read in its entirety in a way that benefits the party facing the possibility of a penalty if a fair reading permits it." Id. The purpose of strictly construing penal statutes is to afford regulated parties with "fair notice" so that "the party upon whom [the statute] is to operate may with reasonable certainty ascertain what the statute requires to be done." Cain v. State , 882 S.W.2d 515, 519 (Tex. App.-Austin 1994).
The parties' dispute about how to properly construe Section 92.019 turns on the resolution of two issues. The first is temporal: Plaintiffs argue that Section 92.019 requires a landlord to estimate its late-payment damages before charging a late fee; Defendants see no such temporal requirement.[3] The second relates to how *610 much work Section 92.019 imposes on landlords: Defendants argue that Section 92.019 does not require landlords to undertake a formal or documented process to estimate their late-payment damages; Plaintiffs respond that no such construction is necessary to find Defendants liable given the evidence in this case.[4] The Court agrees with Plaintiffs on both issues.
Section 92.019 unambiguously requires at least two things from landlords. The first is that a landlord must attempt to calculate or evaluate its late-payment damages. Section 92.019 requires that a late fee be a "reasonable estimate." TEX. PROP. CODE § 92.019(a)(2). An estimate is "[a] tentative evaluation or rough calculation, as of worth, quantity, or size." THE AMERICAN HERITAGE DICTIONARY 609 (5th ed. 2011). To evaluate or to calculate is to do something -one must conduct some sort of analysis, even if imprecise or informal. It follows that an estimate must be the result of a process-the process of calculation or evaluation, even if imprecise or informal. For a late fee to be an estimate, it must therefore at least be the result of some attempt to calculate or evaluate the landlord's damages resulting from the late payment of rent.
The second requirement follows from the first. Section 92.019 states that a landlord "may not charge a tenant a late fee for failing to pay rent unless ... the fee is a reasonable estimate" of the landlord's late-payment damages. TEX. PROP. CODE § 92.019(a)(2). Under the plain text, the thing charged must be an estimate. An estimate is the result of a calculation or evaluation. To be the result of a calculation or evaluation is to be preceded by that calculation or evaluation. For a late fee to be an estimate, it must therefore be preceded by a calculation or evaluation. The statute's second unambiguous requirement, in other words, is temporal: a landlord must attempt to calculate or evaluate its late-payment damages before charging a late fee.[5]
Defendants argue that Section 92.019 contains no temporal requirement-that it requires "only that the estimate be 'reasonable' in the final analysis." (Defs.' Resp. Pls.' Mot. Summ. J., Dkt. 155, at 13). Under such a construction, a landlord could comply with Section 92.019 by charging an arbitrary late fee and then later calculating *611 its late-payment damages to see if those damages reasonably approximate the arbitrary fee charged. Put another way, such a construction would permit a landlord to charge a fee that is not an estimate of anything. A figure chosen arbitrarily, even if it turns out to closely approximate a particular value after rigorous post hoc analysis, is not an estimate of that value, because the figure was never the result of a calculation or evaluation. When the plain text of Section 92.019 bars a landlord from charging a late fee unless it is an estimate, the Court cannot construe the statute to permit a landlord to charge a late fee that is not an estimate.
Defendants' second principal argument addresses a question not at issue in this case. Defendants argue that Section 92.019 does not require landlords to "undertake some type of formalized, documented, prospective estimation." (Defs.' Resp. Pls.' Mot. Summ. J., Dkt. 155, at 11; see also id. at 12 ("Had the Legislature intended to require landlords to engage in some type of formalized process prior to assessing late fees to their tenants, it easily could have done so.") ). But Plaintiffs do not argue that Section 92.019 requires a "formalized, documented estimation process" before charging a late fee or that Defendants are liable because they failed to undertake such a process. (Pls.' Reply Pls.' Mot. Summ. J., Dkt. 158, at 14). Rather, Plaintiffs argue that Section 92.019 requires landlords to conduct an estimate before charging a late fee, and Defendants are liable because they failed to conduct an estimate of damages "in any way, form, or fashion" before setting their late fees. (Id. ). Put another way, Plaintiffs' claim is not that Defendants failed to conduct a reasonable estimate because they failed to follow a formal, documented process when estimating their late-payment damages; instead, their claim is that Defendants failed to conduct an estimate at all-reasonable or otherwise-because they failed to conduct any sort of calculation or evaluation of their late-payment damages before charging late fees to the class members. (Id. ). Because this case turns on whether Defendants conducted an estimate at all-reasonable or otherwise-the Court needs not consider the amount of procedure or sophistication of calculation required by Section 92.019 when conducting a reasonable estimate.[6]
B. Summary Judgment Evidence
Having concluded that Section 92.019 requires a landlord to calculate a reasonable estimate of his or her damages before charging a late fee, the question then becomes whether a reasonable juror could find that MAA or their predecessor, Colonial, calculated such an estimate before deciding that each tenant's lease would include the $75/$10 fee. Plaintiffs' position is that Defendants did not conduct an estimate at any time, before or after the merger. (Pls.' Mot. Summ. J., Dkt. 137, at 17-19; Pls.' Reply Pls.' Mot. Summ. J., Dkt. 158, at 14). Defendants argue that they have presented sufficient evidence to show that Colonial estimated its own damages with the assistance of a consulting firm in 1993, "long before the merger," and that MAA conducted another estimate after the merger when the fees were harmonized.
*612 (Defs.' Resp. Pls.' Mot. Summ. J., Dkt. 155, at 17).
The Court agrees with Plaintiffs-there is no evidence sufficient to create a genuine issue of fact regarding whether Defendants ever conducted any sort of estimate at all, much less a reasonable one. Defendants' corporate representative admits that they "can't point to any document" to support a claim that MAA conducted an estimate before setting their late fee. (Ellsberry Dep., Dkt. 137-3, at 13). He also confirmed that "beyond [his] personal belief," there was no "information to share with the Court or the jury that Colonial conducted an estimate." (Id. at 12). The corporate representative stated that he had not spoken to anyone at MAA or Colonial about "an estimate to determine that $75 as an initial rent late fee in Texas was reasonable." (Id. ). Plaintiffs contend that the evidence shows that Defendants' did not comply with Section 92.019 because "they did not estimate at all" before setting their late fees. (Pls.' Mot. Summ. J., Dkt. 137, at 22). Indeed, from this evidence, the Court agrees that no reasonable juror could conclude that Defendants ever conducted an estimate of their damages before setting the $75/$10 late fee policy.
In light of Plaintiffs' evidence, the burden falls on Defendants to establish the existence of a genuine issue of fact for trial. To do so, Defendants offer only four pieces of evidence. First, Defendants point to a consulting firm's analysis conducted twenty-five years ago. The former Colonial Chief Operating Officer, Paul Earle, provided a sworn declaration that in 1993 Colonial hired a consulting firm that "created processes" that "included a procedure for analyzing and estimating the costs Colonial would incur when its residential tenants failed to pay their monthly rent on time." (Earle Decl., Dkt. 155-2, at ¶ 7-8). As part of that analysis, Colonial considered costs including administrative paperwork, payroll, notice to tenants, and man hours. (Id. at ¶ 9-13). "From that comprehensive analysis," Earle stated, "Colonial reasonably estimated that an initial late fee, and a daily late fee, were required to compensate Colonial for the bad debt and expense incurred by the company." (Id. at ¶ 14). Based on his testimony, Defendants ask this Court to find that MAA and Colonial based the $75/$10 late fee-charged to class members from 2012 to 2017-on an estimate conducted in 1993. (Defs.' Resp. Pls.' Mot. Summ. J., Dkt. 155, at 18). But Defendants have not produced any evidence to show that the $75/$10 fee was based on Colonial's 1993 estimate in any way. Earle only says that "Colonial reasonably estimated that an initial late fee, and a daily late fee, were required." (Earle Decl., Dkt. 155-2, at ¶ 14). Earle's testimony also does not mention any specific dollar amounts. From this evidence, it is entirely possible that Colonial set fees in 1993 that were significantly higher or significantly lower than the $75/$10 fees in this case. Lacking detail or supporting evidence, Earle's testimony merely offers a conclusory statement that an estimate occurred and that it was reasonable. This is not sufficient to create a genuine issue of fact. "Unsupported ... affidavits or deposition testimony setting forth ultimate or conclusory facts and conclusions of law are insufficient to defeat a motion for summary judgment." Clark v. Am.'s Favorite Chicken Co. , 110 F.3d 295, 297 (5th Cir. 1997) (citations omitted); accord Garrison Prop. & Cas. Co. v. Silva , 652 F. App'x. 240, 241 (5th Cir. 2016) ; Alhamzawi v. GEICO Cas. Co. , 216 F.Supp.3d 764, 770 (N.D. Tex. 2016) ; Three Legged Monkey, L.P. v. City of El Paso, Texas , No. CV-00260-FM, 2015 WL 12916324, at *3 (W.D. Tex. Aug. 10, 2015) ("A self-serving affidavit, without more evidence, will not defeat *613 summary judgment.") (citations and quotation marks omitted).
Next, Defendants argue that the testimony of three MAA executives shows that "MAA implemented the $75 initial late fee structure in 2014 after consideration of the uncertain damages to MAA that are incapable of precise calculation resulting from the late payment of rent." (Defs.' Resp. Pls.' Mot. Summ. J., Dkt. 155, at 10; 19-23). However, none of their testimony raises specific facts to establish a genuine issue for trial. The first of the three executives admits that he does not have personal knowledge of either Colonial or MAA's process in setting their late fees. (See Ellsberry Dep., Dkt. 137-3, at 13 ("I was not with the organization at - - at that time"; "I do not know the exact steps."). A witness may testify to a matter at summary judgment only if the witness has personal knowledge of the matter. See, e.g. , Henderson v. Black Elk Energy Offshore Operations, LLC , No. CV H-15-1024, 2018 WL 2100326, at *3 (S.D. Tex. May 7, 2018) (citing Fed. R. Evid. 602 ).
The second executive merely testified to a personal "feeling" that the fees were reasonable, without providing any supporting reasons, data, or documentation. (Mot. Hr'g. Tr., Dkt. 155-3, at 4 (Lambert Testimony) ("[K]nowing what went into collecting rent, I did feel like the $75 was more reasonable.") ). "[T]estimony based on conjecture alone is insufficient to raise an issue to defeat summary judgment." Lechuga v. S. Pac. Transp. Co. , 949 F.2d 790, 798 (5th Cir. 1992) (finding "conclusory" and "unspecific" statements inadequate to raise a genuine issue of fact). Lambert's conjecture is not sufficient to raise a genuine issue of material fact regarding whether Defendants conducted an estimate of damages before setting the late fee policy.
Defendants' only remaining evidence is the testimony of MAA's former Vice President/Director of Corporate Services, James Maclin, who set the late fees following the merger. (See Mot. Hr'g. Tr., Dkt. 155-3, at 7-11; Maclin Dep., Dkt. 155-4, at 7-9).[7] But Maclin has testified repeatedly in unspecific and general terms without providing any supporting facts. (Mot. Hr'g. Tr., Dkt. 155-3, at 11 ("Q: [W]hat factors did you consider in setting $75 as the reasonable estimate ...? A: The key is to make sure that we're able to, you know, cover our costs and our liabilities relative to the practices that we had related to collecting rents, you know, based upon the number of people that were involved in that process, and it basically touching every aspect of our business. It's just, you know, we felt it was - - I felt it was reasonable to increase - - you know, 75 was a reasonable amount."); Maclin Dep., Dkt. 155-4, at 9 ("[W]e can come up with estimates. There are certain costs that are fixed ... we analyzed and we looked at our complete structure from CEO down to groundskeeper, the systems involved ... and found that the $75 was a reasonable estimate.") ). Maclin's repetition of the same conclusory statements does not raise specific issues of fact. Although Maclin testified that late fees were "part of th[e] conversation" when he spoke to Earle as part of a post-merger SWOT analysis, (Mot. Hr'g. Tr., Dkt. 155-3, at 7),[8] Maclin *614 admitted that Earle never showed him "any empirical date or internal numbers that Colonial had" regarding late fees. (Maclin Dep., Dkt. 155-4, at 7-8). When asked explicitly, Maclin could not specify any steps MAA has taken to ensure that the late fees represent a reasonable estimate of damages. (Maclin Dep., Dkt. 155-4, at 7 ("Q: What steps has MAA taken to make sure that the current late fee ... is, in fact, a reasonable estimate of those hard to calculate damages? A: Again, at this point I have ballparked that number ...") ). Maclin admits that he does not have "the detail" to explain the "specific number" of $75. (Id. ("Q: So you can't say whether or not the actual harm MAA suffered as a result of that late payment is more than $75.00, less than $75.00, or equal to $75.00; is that fair? A: We don't have the detail, but we feel that it's reasonable when you take into account the entire process and all the people that that delinquency impacts ... But we don't have the detail to back into specifically that specific number.") ).
Lacking any supporting evidence or detail, Maclin's repeated assertion that he conducted an estimate and that it was reasonable does not raise an issue of fact. "Mere conclusory allegations are not competent summary judgment evidence, and they are therefore insufficient to defeat or support a motion for summary judgment." Topalian v. Ehrman , 954 F.2d 1125, 1131 (5th Cir. 1992) (citations omitted); see also Garrison Prop. & Cas. Co. , 652 F. App'x. at 241 ; Clark , 110 F.3d at 297. Maclin's testimony is insufficient to raise a genuine issue of material fact regarding whether Defendants conducted an estimate of damages before setting the $75/$10 late fee policy.
With no evidence from which a reasonable juror could find for Defendants, Plaintiffs are entitled to summary judgment in their favor on the issue of Defendants' statutory liability.
B. Defendants' Motion for Summary Judgment
Defendants' motion for summary judgment largely repeats their response to Plaintiffs' motion. (See Defs.' Mot. Summ. J., Dkt. 204; Defs.' Resp. Pls.' Mot. Summ. J., Dkt. 155). Defendants argue that the plain language of Section 92.019 does not require a prospective estimate of damages, and even if it does, Defendants conducted an estimate. (Id. ). The Court addresses each argument in turn.
First, on the question of statutory construction, Defendants repeat most of the same arguments regarding strict construction and plain meaning from their response to Plaintiffs' motion. (See Defs.' Mot. Summ. J., Dkt. 204, at 18-19; Defs.' Resp., Dkt. 155, 11-17). The Court rejected those arguments. (See supra , at 6-8). Here, Defendants also argue that Section 92.019 must be strictly construed because the statute is "penal in nature." (Defs.' Mot. Summ. J., Dkt. 204, at 19 (citing In re Hecht , 213 S.W.3d 547, 572 (Tex. Spec. Ct. Rev. 2006) (citing Cain v. State , 882 S.W.2d 515, 519 (Tex. App. - Austin 1994, no writ) ) ). They argue that strict construction in this context "means that, when a statutory provision is unclear, the statute is read in its entirety in a way that benefits the party facing the possibility of a penalty if a fair reading of the statute permits it." (Id. (citing Hovel v. Batzri , 490 S.W.3d 132, 137 (Tex. App. - Houston [1st Dist.] 2016, pet. denied) ) ). However, as discussed supra , Section 92.019 is not unclear. There is no ambiguity in the statute's requirement that the fee be an estimate when it is charged and therefore that some analysis of the landlord's damages must precede the charging of a late fee. (See supra , at 7 n. 5). Because the statute is unambiguous, the Court will not read *615 the statute in favor of either party; it will construe the statute according to its plain meaning. Galbraith Eng'g Consultants , 290 S.W.3d at 867 (citing City of Rockwall , 246 S.W.3d at 625-26 ). Section 92.019 requires that a landlord must attempt to calculate or evaluate its late-payment damages before charging a late fee. (See supra , at 6-8).
Second, Defendants argue that even if the statute does require a prospective estimate of damages, Defendants complied with the statute. (Defs.' Mot. Summ. J., Dkt. 204, at 22). In their response to Plaintiffs' motion for summary judgment, Defendants did not produce any evidence from which a reasonable juror could find that Defendants conducted a prospective estimate. (See supra , at 9-13). Here, in their own motion for summary judgment, Defendants offer just one additional piece of evidence. Defendants offer a new declaration by MAA's former Vice President/Director of Corporate Services, who set the late fees following the merger. (Maclin Decl., Dkt. 205-7).[9] However, Maclin's testimony in the declaration is not evidence that MAA conducted an estimate of damages. Maclin testifies that before and immediately following the merger, he "evaluated the possibility of increasing MAA's late fees based on the significant amount of costs and the time that our property management teams were putting into the late rent collection process." (Id. ¶ 9). He also testifies that he received an email from one of MAA's Texas Regional Vice Presidents "requesting that [he] approve moving the Legacy MAA properties to an initial $75 late fee to be in line with the initial late fee then assessed by [properties acquired from] Colonial." (Id. ¶ 12). Maclin states that he approved the change because he "felt that the $75 initial daily fee more appropriately reflected MAA's costs associated with the business processes designed to collect late rent." (Id. ¶ 14). However, none of this new testimony raises specific facts to show that Maclin's "evaluation" of the fees involved any estimate or calculation. Indeed, Maclin's other testimony contradicts any argument that Maclin or any other party at MAA conducted an estimate. As the Court addressed above, Maclin admitted that he "ballparked" the $75 fee. (Maclin Dep., Dkt. 155-4, at 7 ("Q: What steps has MAA taken to make sure that the current late fee ... is, in fact, a reasonable estimate of those hard to calculate damages? A: Again, at this point I have ballparked that number ...") ). Maclin also admitted that he did not have "the detail" to explain the "specific number" of $75. (Id. ("Q: So you can't say whether or not the actual harm MAA suffered as a result of that late payment is more than $75.00, less than $75.00, or equal to $75.00; is that fair? A: We don't have the detail, but we feel that it's reasonable when you take into account the entire process and all the people that that delinquency impacts ... But we don't have the detail to back into specifically that specific number.") ). Defendants' new declaration by Maclin does not raise any additional evidence to support their claim that they conducted a prospective estimate of damages.
Because Defendants' motion does not introduce any evidence from which a reasonable juror could find for Defendants, their motion for summary judgment on the issue of statutory liability is denied.
VII. CONCLUSION
For these reasons, the Court ORDERS that Plaintiffs' Second Motion for Partial Summary Judgment, (Dkt. 137), is *616 GRANTED. The Court FURTHER ORDERS that Defendants' Motion for Summary Judgment, (Dkt. 204), is DENIED .
This order does not resolve a number of outstanding issues, including Plaintiffs' pending Motion for Partial Summary Judgment on Defendants' breach of contract counterclaim, (Dkt. 104), and Defendants' pending Motion for Summary Judgment on Claims Asserted by Plaintiffs Areli Arellano and Joe L. Martinez, (Dkt. 156).

Cathi Cleven, Tara Cleven, Areli Arellano, and Joe L. Martinez moved to certify a class of MAA and Colonial tenants who were also charged a late fee under the same policy. (Mot. Class Cert., Dkt. 126). The Court granted that motion by adopting a report and recommendation that recommended certifying the class. (Order, Dkt. 208, at 23; R. & R., Dkt. 166, at 19). The class includes all persons who (i) residential tenants of apartment properties in the State of Texas under written leases where MAA or its predecessor in merger, Colonial, served as an owner or landlord, and (ii) were assessed and paid an initial rent late fee of $75.00 and/or a daily rent late fee of at least $10.00 between June 29, 2012, and September 20, 2017. (See Order, Dkt. 208, at 23-24). As the magistrate judge and this Court found, Defendants set the late fee in each class member's lease according to a standard policy. (Order, Dkt. 208, at 17; R. & R., Dkt. 57, at 8). Because the Court certified a class before deciding this motion and because Defendants' liability is established on a classwide basis, the relief set forth in this order will apply classwide. The Court will therefore refer to the plaintiffs collectively. This order does not resolve a number of outstanding issues, including Plaintiffs' pending Motion for Partial Summary Judgment on Defendants' breach of contract counterclaim, (Dkt. 104), and Defendants' pending Motion for Summary Judgment on Claims Asserted by Plaintiffs Areli Arellano and Joe L. Martinez, (Dkt. 156).

Section 92.019 is a penal statute because it creates a penalty. Penalties "go beyond compensation" in order to punish or deter wrongdoers. In re Xerox Corp. , 555 S.W.3d. 518, 530 (Tex. 2018). A statutory provision authorizing a civil penalty of treble actual damages is "essentially punitive even if [it has] compensatory traits." Id. at 532. A landlord who violates Section 92.019 is liable for the sum of (a) $100, (b) three times the amount of the late fee, and (c) the tenant's reasonable attorney's fees. Tex. Prop. Code § 92.019(c). Section 92.019's treble-damages provision, which goes beyond compensating tenants for paying the late fee they were charged, renders the provision a penalty before even considering the additional liability for a fixed sum and attorney's fees.

(See Pls.' Mot. Summ. J., Dkt. 137, at 12 ("[B]efore [landlords] may [set late fees], they must first estimate their damages that result from late payment of rent."); Defs.' Resp. Pls.' Mot. Summ. J., Dkt. 155, at 13 ("[I]f the Legislature had intended to require landlords to conduct a 'prospective estimate' of their uncertain damages, it would have inserted that temporal requirement into § 92.019. But it did not; it required only that the estimate be 'reasonable' in the final analysis.").

(See Defs.' Mot. Summ. J., Dkt. 204, at 20 ("[A]ccording to Plaintiffs, [Section 92.019 ] bars the imposition of a late fee unless the landlord first undertakes a formal, documented process to prospectively estimate damages."); Pls.' Reply Pls.' Mot. Summ. J., Dkt. 158, at 14 ("Plaintiffs are not arguing Section 92.019 requires any 'formalized, documented estimation process.' Rather, the violation is that Defendants set their late fees to make money and without considering-in any way, form or fashion-the amount of damages, if any, Defendants could realistically incur 'from late payment of rent.' " (emphases in original) ) ).

Defendants argue that this construction of Section 92.019"conflicts with mandated principles of strict statutory construction" because it "write[s] into [the] statute a provision when one simply does not exist." (Defs.' Mot. Summ. J., Dkt. 204, at 19). On the contrary, this construction draws conclusions compelled by the plain language of the statute. Strict construction only requires that the statute be read to benefit Defendants if a provision is unclear. Hovel , 490 S.W.3d at 136. Whatever ambiguities may lie in Section 92.019's reasonableness requirement, there is no ambiguity in the statute's requirement that the fee be an estimate when it is charged and therefore that some analysis of the landlord's damages must precede the charging of a late fee.

While an estimate need not be the product of a formalized or documented process, it may be the case that Section 92.019's "reasonable estimate" requirement sets a floor on the informality or imprecision with which a landlord can estimate its damages from late payment. The Court need not decide where that floor lies in this case, because the resolution of Plaintiffs' motion turns on whether Section 92.019 requires a landlord to estimate his or her damages from late payment before charging a late fee, however informally or unrigorously, and whether Defendants did anything to conduct such an estimate, however informal or unrigorous.

Maclin's deposition was originally given in a related case, Dominguez v. Mid-American Apartment Cmtys., Inc., et al. , 1:15-CV-293-RP (W.D. Tex. Apr. 17, 2015), which has since settled.

"Q: Did you have any conversations ... with Mr. Earle concerning Colonial's late fee structure at all? A: Yes... there were a number of items that were included in the SWOT analysis of which, you know, late fees was part of that conversation." (Mot. Hr'g. Tr., Dkt. 155-3, at 7).

Maclin's other testimony was insufficient to raise a genuine issue of material fact regarding whether Defendants conducted an estimate of damages before setting the $75/$10 late fee. (Seesupra , at 12-13 (citing Mot. Hr'g. Tr., Dkt. 155-3; Maclin Dep., Dkt. 155-4) ).